## CLEVELAND–CLIFFS IRON CO. v. MARTINI.

### No. 7445.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1938.

Thomas H. Garry and Gilbert R. Johnson, both of Cleveland, Ohio (Duncan, Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, on the brief), for appellant.

Howell Leuck, of Cleveland, Ohio, for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment rendered in an action for wrongful death brought under the provisions of section 688, title 46, U.S.C., 46 U.S.C.A. § 688[1]. The jury found for the plaintiff.

The principal assignment of error is that the District Court erred in refusing to direct a verdict for the defendant.

The controversy arose out of an accident on a freight vessel which was preceeding on Lake Erie from Ashtabula, Ohio, to Sandusky, Ohio, the freighter having been completely unloaded at Ashtabula. A cargo of coal was to be taken on at Sandusky. Martini, the deceased, was a wireless operator on the freighter, and was killed by falling through a hatch in which one leaf had been left open.

It was Martini's duty to disconnect the radio aerial on arriving in port, to allow for loading or unloading. The aerial when in position was strung between masts situated at the aft and forward ends of the freighter, before the hatches were opened for loading or unloading it the aerial was disconnected from the forward mast, and lashed out of the way on the side-rail. When the freighter left port it was Martini's duty to unlash the aerial from the side-rail, reconnect it to the forward mast, and prepare for the sending of messages, which, under the company's rules, were usually transmitted to the owner about the time the freighter left port. Martini had been ordered not to raise the aerial into place after the cargo was discharged until all the hatches were covered.

Both before and after the freighter left the Ashtabula dock the crew had been covering the hatches, there being thirty hatches in all. While hatches 26 and 28 in the aft end of the freighter had been closed, in each one a center leaf was left open in order that ore sweepings might be removed and that the hold might be cleaned out for the load of coal to be taken on at Sandusky. These two hatches were the last to be closed. McLennan, the watchman who was employed in removing the ore and in closing the hatches, said it was forty minutes from the time the ore was taken out until the hatches were closed. At about forty minutes after leaving port the captain desired to send a message, and called for Martini. He did not answer, and search was made. His body was found at the bottom of hatch 28. No one had seen him fall, but the radio antenna was found unlashed and lying across hatch 28. The last time Martini was seen alive he had been in the forward part of the freighter doing something in connection with the aerial. It is conceded that the decedent was in the performance of work within the line of his duties on the freighter, and that he fell through the hatch while acting in the course of his employment.

Defendant contends that the open hatch was an ordinary risk which was assumed by the decedent. But, as held in Pittsburgh S. S. Co. v. Palo, 6 Cir., 64 F. 2d 198, a seaman suing under section 688, title 46, U.S.C., 46 U.S.C.A. § 688, does not assume the risk of injury even from obvious dangers if they arise from failure to supply and keep in order proper appliances appurtenant to the ship. The same rule is applied in case of failure of the employer to provide a safe place to work. Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; cf. Cincinnati, N. O. & T. P. Ry. Co. v. Hall, 6 Cir., 243 F. 76, 83.

Defendant also contends that the proximate cause of the decedent's death was not shown, but was left to mere conjecture. Where the evidence presents no more than a choice of probabilities, it is

[1] Section 688, title 46, U.S.C., 46 U.S.C.A. § 688:

"Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable."

Under this enactment section 51 et seq., title 45, U.S.C., 45 U.S.C.A. § 51 et seq., are incorporated by reference into the foregoing section.

not sufficient to justify submission to the jury. Parker v. Gulf Refining Co., 6 Cir., 80 F.2d 795; O'Mara v. Pennsylvania R. Co., 6 Cir., 95 F.2d 762. But this is not the situation here. The physical facts demonstrate that Martini was killed by falling through hatch 28. Both the operation of the hatch covers and Martini's acts in the performance of his duties were under the immediate control of the employer at the time Martini fell into the hold. While there was a standing order that no one should walk upon the hatches, the record presents no proof in support of defendant's contention that Martini disobeyed it. Just what Martini did which led to his fall is not shown; but if the employer was negligent, Martini's acts are relevant only as bearing upon his contributory negligence. If leaving the hatch open was negligence, it is plain that it proximately caused Martini's death; for whether Martini stumbled or negligently fell through the hatch, the fact that it was open was a contributing cause of his death.

■ But contributory negligence of Martini, if any, may be considered only in mitigation of the damages to which the plaintiff would otherwise be entitled. Section 53, title 45, U.S.C., 45 U.S.C.A. § 53, which by reference is incorporated into section 688, title 46, U.S.C., 46 U.S.C.A. § 688, provides that "the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee." Proper instructions on this phase of the case were given by the court.

■■ The sole issue in the case is whether there is substantial evidence that appellant's negligence was the proximate cause of Martini's death. While there was evidence that a custom existed of leaving the hatches open after unloading so as to clean out the hold for new cargo, they were left open in this instance for a substantial time after the cleaning operation had ceased. McLennan explains this fact by saying that "The hatches were left open because the men on deck who would be available to close the hatch were doing other work."

Under section 688, title 46, U.S.C., 46 U.S.C.A. § 688, it was the duty of the employer to furnish Martini a reasonably safe place in which to work. Beadle v. Spencer, supra; Northwestern Pacific R. Co. v. Fiedler, 9 Cir., 52 F.2d 400. This duty is nondelegable and is continuing. Cincinnati, N. O. & T. P. Ry. Co. v. Hall, supra. The operation of the hatches was under the control of the captain. It was time for Martini to put up the aerial. Martini was under orders to do this on leaving port in order to be prepared to send messages, and to report to the captain as soon as he was ready. He was also ordered not to make the coupling until the hatches were closed. But he could not comply with the first order unless the hatches were closed with reasonable promptness on leaving port, and he had the right to assume that this had been done. However, it was forty minutes after the ore sweepings had been taken out that hatches 26 and 28 were closed. The captain called for Martini about forty minutes after leaving the dock. He also must have assumed that the hatches were closed and the aerial replaced. Martini had no control over the hatches. His safety depended not only upon his own care, but also upon that of his employer. Cf. Cincinnati, N. O. & T. P. Ry. Co. v. Hall, supra. The crew had closed all other hatches before they closed the leaves in 26 and 28. The mate, who was at all times on deck during this work, saw Martini going aft, working with the aerial, but there is no evidence that any warning was given him of the open leaf. This was an unexpected hazard after the crew had apparently finished closing all the hatches. The coupling was to be made directly above hatch 28, and so Martini would naturally stand near it in the three-foot aisle between the hatches. The coaming around the hatches was only twenty inches high. The fact that the aerial was unlashed and across hatch 28 when Martini was found would indicate that he fell while working with the aerial after it had been removed from the rail. These circumstances, we think, constitute substantial evidence of negligence on the part of the employer, and the case was properly submitted to the jury.

Judgment affirmed.