[Civil No. 3950.    Filed July 5, 1938.]

[80 Pac. (2d) 952.]

## THE OWL DRUG COMPANY, a Corporation, Appellant, v. EUGENE F. CRANDALL and MARTHA CRANDALL, Appellees.

Messrs. Cunningham & Carson and Messrs. Snell, Strouss & Salmon, for Appellant.

Messrs. Struckmeyer & Flynn, for Appellees.

ROSS, J.—Eugene F. Crandall and Martha Crandall, husband and wife, brought this action against the Owl Drug Company for damages for personal injuries sustained by the wife Martha, in the defendant's drug store in Phoenix, from a fall which it is claimed it was the duty of defendant's servants and agents to prevent, and which by the exercise of reasonable care they could have prevented.

At the close of plaintiffs' case, and at the close of the whole case, defendant moved for a directed verdict on the grounds (1) that there was no evidence that defendant or its agents were guilty of any negligence and (2) that there was no evidence of any causal relation between the injury to plaintiff and the negligence, if any, of the defendant.

The case was submitted to the jury and the jury's verdict was in favor of plaintiffs in the sum of $11,000, upon which judgment was duly entered.

The failure of the court to direct a verdict or to grant a new trial is urged as reasons for this appeal.

The defendant has in its drug store a lunch counter where it dispenses refreshments such as food and light drinks. In front of the lunch counter are revolving stools, set in a raise some fourteen inches wide and nine or ten inches above the level of the store floor, and parties ordering refreshments sit on these stools while being served. About 4 P. M., on December 4,

1935, the plaintiff, Martha Crandall, after being served at the lunch counter, turned the stool to get down onto the floor and in some way lost her balance and fell forward to the floor and in the fall received injuries that caused her to faint and numbed her right side from shoulder to foot. No complaint is made that this fall and injury were the result of any negligence of defendant or its servants. It is what happened after this fall that plaintiffs make the basis of their grievance. We quote from their amended complaint:

"IV. That the said defendant, acting through its agents and servants employed by the defendant in said store, observed and noticed the fall of the plaintiff to the floor of said store and thereupon assumed to render aid to the plaintiff, but in so doing acted in a highly careless and negligent manner, in this: having observed the severe and sudden fall of said plaintiff, they undertook to assist her to rise and forced her to rise from said floor and undertook to assist her in rising, but in so assisting her to rise, suddenly and without warning to the said plaintiff released the hold which they then had upon her and by such sudden release, and while the said plaintiff was in a half stunned or fainting condition, which condition was readily observable by them, permitted her to fall again to the floor, thereby causing severe injuries to the said plaintiff. That they did assume to call in a physician and surgeon for the purpose of having her examined and did, after a claimed examination, inform the said plaintiff that she was not injured, when in fact the plaintiff by said second fall had sustained severe injuries, hereinafter more particularly described, and did force the plaintiff to remain in said store for a long space of time, to-wit, for more than one hour, without rendering her any other or further assistance or aid, except such negligent assistance and aid as hereinbefore stated.

"V. That by said second fall the said plaintiff, Martha Crandall, sustained a comminuted fracture of the neck of the right femur, . . . ."

■ The rule of the law of torts that plaintiffs rely upon as justification for their claim for damages is:

"One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by

"(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge;

"(b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him." 2 Am. Law Inst., Torts, sec. 324.

This statement of the law we accept as correct. The only question, then, is, do the facts of this case bring it within the scope of the rule. The defendant's employees, actuated by the noble and natural impulse of sympathy for a fellow being in dire distress and unable to help herself, immediately went to plaintiff and one of such employees on one side and another on the other side lifted plaintiff from the floor and seated her on the stool from which she had fallen, or one next to it, where she remained until a doctor came and made a cursory examination of her. The doctor advised that she be removed from the stool to an easier position, or as she testified "that they should get me on my feet so I could get my balance and I would be all right." It is undisputed that two employees, one on each side as above stated, undertook to help plaintiff from her seat at the lunch counter to the floor and in doing so, as she testified, while Mills, the defendant's manager was holding "on to my right arm . . . I swung around and fell in a heap." It appears from this statement that only one person was helping plaintiff when she "swung around" and fell, but upon her cross-examination she said she did not remember whether anybody else helped Mills; that she was in "a faint condition"

and could not remember. All the witnesses said two persons were helping her, one on each side. The allegation of the complaint is that "they (agents and servants) . . . released the hold which they then had upon her," etc.—an admission that more than one was helping her.

It is to this second fall that plaintiff ascribes her injuries. In her complaint she alleges that the men who assumed to help her "acted in a highly careless and negligent manner" and that they forced her from the floor and then "suddenly and without any warning . . . released the hold which they had upon her and by such sudden release . . . permitted her to fall again to the floor." What the defendant's agents did or failed to do, as described in the above quotation from the complaint, is the basis of this action.

The evidence is that defendant's employees lifted plaintiff from the stool, and not the floor. There is no evidence that they applied any force in their efforts to help her nor is there any evidence from plaintiff or any other source that they suddenly released their hold on her, or that they purposely or negligently permitted her to fall the second time. The fact appears to be that she fell notwithstanding their honest and conscientious efforts to help her. Negligence is

"The failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or the doing what such a person under the existing circumstances would not have done. *Baltimore & P. R. Co.* v. *Jones,* 95 U. S. [439], 441, 24 L. Ed. 506." Bouv. Law Dict., 3d Rev., p. 2312.

We may ask, Wherein would a reasonable and prudent person have acted any different than defendant's employees? Under the rule, defendant's servants were required to exercise reasonable care in their ministrations and if they did and, notwithstanding,

plaintiff sustained further injuries while they were trying to help her, there is no liability. The evidence is uncontradicted that the defendant's employees at once offered to send for a taxi to take plaintiff to a doctor; that the reason they did not do so was that she said "she didn't think she could get into a car." They telephoned for a doctor for her and Dr. Michael Matanovich, a skilled, experienced and learned surgeon, in response to the call, went to the drug store. The doctor testified:

"I saw her on the fountain stool sitting, in terrible pain and in a very uncomfortable position. . . . She said she fell down and she says she has terrible pain. She tried to get up on her legs, and could not. . . . generally it was the right side, I touched her leg. She said it was very sore . . . . I suspected a broken leg. . . . She was on the small stool and they took her and put her in a more comfortable chair about a few feet farther away on the floor. I told Mr. Sabin (an employee) . . . to take her right up for a proper examination and I intended to take X-ray pictures and examine her, because I could not examine her there . . . ."

Defendant's agents, in removing plaintiff from the stool, acted under the direction and in the presence of the doctor and would have taken her to his office for X-ray and further examination but she refused to go and insisted upon seeing her husband. These employees tried to locate her husband and finally at her request telephoned Mrs. Lilly Mae Bayless, who came and took her away in her automobile. The evidence shows that the agents' and servants' attention to her was constant and responsive to her wishes except in one respect. She asked for Dr. E. Payne Palmer and for some unexplained reason they did not call Doctor Palmer, but no complaint is made that her injury would not have occurred had he been called instead of Doctor Matanovich. They telephoned the offices of

two other reputable and well known physicians before they called Doctor Matanovich but got no response.

While the rule that one who volunteers to help another who is unable to take care of himself is that the volunteer shall exercise reasonable care to secure the safety of the one to whose rescue he goes, we do not think it should be extended to cover the good Samaritan, who has done the best he can and knows how to do or who follows the instructions of a physician in his ministrations, and hold him for damages for injuries he did not cause and could not prevent. A volunteer does not become an insurer of the person he seeks to aid.

We well remember the rule so often announced by this court on the conflict of evidence and our duty to accept the jury's decision thereon. We adhere to that rule but, where from the evidence it is clear that reasonable men can come to but one conclusion, we have never hesitated to set aside a jury's finding contrary to such conclusion. In this case we hold there is no evidence to support a verdict of negligence. A plaintiff must show more than that she has been injured; she must show that the injury was caused by the negligence of the party charged, and *that* the plaintiffs here have not done.

Plaintiff testified that she suffered three falls. It is without question she sustained in one of these falls most serious injuries. She exonerates defendant from any fault for the first fall but blames defendant for the second fall. Defendant claims under the evidence it is as reasonable, or more so, to conclude she sustained the fractured femur in the first fall, which it is admitted was without defendant's fault, as to conclude that she sustained the fracture in the second fall, which she claims was the result of defendant's fault. Defendant invokes the rule that where the evi-

dence shows an injury may have resulted from one of several causes, but only one of the causes can be attributed to the defendant's negligence, the plaintiff must fail. This rule is amply supported by the authorities. 2 A. L. I., Torts, section 430; *Weber* v. *Valier & Spies Milling Co.*, (Mo. App.) 242 S. W. 985; *Katskee* v. *City of Omaha*, 110 Neb. 380, 193 N. W. 752; *Fisher* v. *Butte Elec. R. Co.*, 72 Mont. 594, 235 Pac. 330. Since the case does not turn on this point, we will not try to explain or reconcile some of the evidence in the case bearing upon it.

We are satisfied that the plaintiffs have failed to make out a case of negligence and for that reason the judgment is reversed and the cause remanded with directions to dismiss the complaint.

McALISTER, C. J., and LOCKWOOD, J., concur.