232 P.2d 107

## TAYLOR v. ROOSEVELT IRR. DIST.
### No. 5209.

Supreme Court of Arizona.

Decided May 22, 1951.

162

Shute & Elsing, Phœnix, for appellant.

Kramer, Morrison, Roche & Perry and Burr Sutter, Phœnix, and Harry W. Bagnall, Jr., Coolidge, of counsel, for appellee.

Jennings Strouss, Salmon & Trask, Charles L. Strouss, Phœnix, for Salt River Agricultural and Power Dist., amici curiæ.

Campbell, Rolle & Jones, James B. Rolle, Jr., Yuma, for Yuma Irr. Dist., amici curiæ.

Westover & Mansfield, J. D. Mansfield, Yuma, for Unit B—Irrigation & Drainage Dist. and North Gila Valley Irr. Dist., amici curiæ.

Reed & Wood, Charles H. Reed, Coolidge, for San Carlos Irr. Dist., amici curiæ.

Guy Anderson, Safford, for Gila Valley Irr. Dist., amicus curiæ.

A. Van Wagenen, Jr., Phœnix, for Electrical Dist. No. 2, Pinal County, and Electrical Dist. No. 5, Pinal County, amicus curiæ.

Louis B. Whitney, Phœnix, for Electrical Dist. No. Four, Pinal County, amicus curiæ.

Fred A. Ironside, Jr., Phœnix, for Roosevelt Water Conservation Dist., amicus curiæ.

STANFORD, Justice.

After the court handed down its written opinion in this case, reported in 71 Ariz. 254, 226 P.2d 154, a motion for a rehearing was granted. At this time various political subdivisions of the state filed a petition for leave to file briefs amici curiæ, which petition was duly granted. Brief of amici curiæ was filed in support of appellee's motion for rehearing.

On reconsideration of the case from the various contentions set forth, we are of the opinion that our former opinion correctly disposed of the case. We adhere to the rule announced therein that the Roosevelt Irrigation District was a political subdivision of the state, acting in its proprietary capacity, and while acting in such capacity is liable for its negligence.

As pointed out in our former opinion, the constitutional amendment, Section 7, Article 13, was adopted for the purpose of granting tax immunity to irrigation, power, electrical, agricultural im-

provement, drainage, and flood control districts, and tax levying public improvement districts. The true character of such districts was analyzed by this court in Day v. Buckeye Water, etc. Dist., 1925, 28 Ariz. 466, 237 P. 636, 638, as follows:

"Counties, cities, towns, and municipalities all belong to a class of subdivisions of the state primarily established for what are commonly called political and governmental, as aside from business purposes. Any exercise of the latter function is merely incidental to their existence and in no way necessary for it. And in the past, and particularly when it took one of the forms prohibited by the section in question (sec. 7, art. 9, Const.), such exercise has generally resulted so disastrously to the public that the wisdom and purpose of the constitutional provision as applied to such subdivisions is plain. On the other hand, irrigation districts and similar public corporations, while in some senses subdivisions of the state, are in a very different class. Their function is purely business and economic, and not political and governmental. They are formed in each case by the direct act of those whose business and property will be affected, and for the express purpose of engaging in some form of business, and not of government. The power of incurring obligations of any nature is ultimately left in the hands of those whose property is affected thereby."

"Districts of the kind involved in this proceeding therefore belong to that class of organizations, once rare but becoming more and more common, established for the pecuniary profit of the inhabitants of a certain territorial subdivision of the state, but having no political or governmental purposes or functions. In some respects these organizations are municipal in their nature, for they exercise the taxing power, the greatest attribute of sovereignty, and can compel the inclusion of unwilling landholders within their bounds. In other ways they resemble private corporations, for they are liable for the torts of their servants in the same manner and to the same extent, and indeed generally have the same rights and responsibilities. Probably the best definition we can give then is to say that they are corporations having a public purpose, which may be vested with so much of the attributes of sovereignty as are necessary to carry out that purpose, and which are subject only to such constitutional limitations and responsibilities as are appropriate thereto." Maricopa County Municipal Water Conservation Dist. No. 1 v. La Prade, 45 Ariz. 61, 40 P.2d 94, 100.

The actual operation and functioning of the district after the adoption of the constitutional amendment, supra, was in the same factual manner as at the time of the Day case. The adoption of the constitutional amendment in no sense altered the inherent characteristics of the district. With this observation in mind, we desire to point out that this amendment only attempted to vest such districts with all of the rights, privileges, benefits, immunities, and

exemptions granted municipal and political subdivisions under the *Constitution or any law* of the state or the United States. There are no constitutional or statutory provisions exempting municipalities or political subdivisions from tort liability when committed in the prosecution of either governmental or proprietary activities. By court decisions political subdivisions, as distinguished from municipalities, have been vested with immunity from their acts of negligence arising out of purely governmental activities. The state, State v. Sharp, 21 Ariz. 424, 189 P. 631; State v. Dart, 23 Ariz. 145, 202 P. 237; school districts, School Dist. 48 of Maricopa County v. Rivera, 30 Ariz. 1, 243 P. 609, 45 A.L.R. 762; and counties, Hartford Accident & Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328. But in this jurisdiction immunity from tort liability is denied to municipalities even though arising out of the governmental activity in the construction or repair of streets and sidewalks. Such has been the "law" (court made) both before the constitutional amendment under consideration, Schultz v. City of Phoenix, 1916, 18 Ariz. 35, 156 P. 75; Dillow v. City of Yuma, 1940, 55 Ariz. 6, 97 P.2d 535; and *since* the constitutional amendment—City of Phoenix v. Weedon, 1950, 71 Ariz. 259, 226 P.2d 157. The same rule is applicable to municipal corporations for their negligence in the construction or repair of sewers, City of Phoenix v. Johnson, 51 Ariz. 115, 75 P.2d 30; defects in the construction of culverts for drainage, City of Tucson v. O'Rielly Motor Co., 64 Ariz. 240, 168 P.2d 245; maintaining a sewer system so as to constitute a nuisance, City of Phoenix v. Johnson, supra.

On the other hand, immunity has been granted to a municipality for its negligence resulting in damage due to a defective automobile used in the collection of garbage, upon the theory that such work was governmental in nature. Jones v. City of Phoenix, 29 Ariz. 181, 239 P. 1030. On the same theory, immunity was granted to the municipality for the negligent operation of an automobile by a police officer engaged in his regular line of duty. City of Phoenix v. Greer, 43 Ariz. 214, 29 P.2d 1062.

But at no time in this jurisdiction, so far as we are aware, have municipal corporations been immune from liability for their torts committed in the performance of proprietary pursuits, Sumid v. City of Prescott, 27 Ariz. 111, 230 P. 1103; Jones v. City of Phoenix, supra. Regardless of the fact that our cases may show some inconsistency in drawing a line of demarcation between what is governmental and what is proprietary, we experience no difficulty in determining that the appellee corporation is in essence a business corporation and that such attributes of sovereignty as have been conferred upon it are only incidental and were conferred for the purpose of better enabling it to function and accomplish the business and economic purposes for which it was organized.

For the purpose of clarity we deem it advisable to more clearly enunciate the duty of the district with reference to the fence that it had constructed on the canal banks. Appellee and amici curiæ earnestly insist that there was no duty upon the district in the first instance to fence the canal, and assert that if there was no such duty it was then under no obligation to maintain the fence. For the reasons set forth in our case of Salladay v. Old Dominion Min. Co., 12 Ariz. 124, 100 P. 441, 442, we are of the opinion that the rule in this jurisdiction is, and should continue to be, that an irrigation district is under no legal duty to fence such a canal as the one under consideration. In the Salladay case this court said: " * * *. It is a matter of common knowledge that alluring and attractive flumes, such as the one in question in this case, carrying running water, are extensively used in this territory, not only by miners in the necessary and proper conduct of their business, but by farmers in the necessary diversion and application of the public streams to a beneficial use upon their lands in the cultivation of their crops. Not only flumes but irrigation ditches, large and small, similar in purpose, construction, and use, and equally dangerous and alluring to the child, are to be found throughout the territory wherever cultivation of the land is carried on, and such conduits, practically impossible to render harmless, are indispensable for the maintenance of life and prosperity. * * *"

While the defendant in that case owned the land on which the flume was located and plaintiff relied on the "attractive nuisance doctrine", the principle laid down as a matter of public policy is that it is not negligence for the owner of an irrigation canal to fail to fence it. Particularly would that seem to be true under the circumstances in the present case. Had defendant left its canal unfenced it would not have been guilty of negligence in so doing. The complaint, however, alleges that defendant erected the fence for the purpose of preventing cattle from entering the canal and being trapped therein and that plaintiff knew thereof and relied upon the fence as a protection for his cattle, and that after building the fence the defendant negligently caused it to be partially destroyed so that it no longer would protect cattle from falling into the canal, of which destruction defendant had full knowledge but gave no notice thereof to plaintiff and plaintiff was ignorant of the fact. It is the law that if one who is under no duty to another to protect him in person or property voluntarily assumes such a duty, he must perform it in a reasonably careful manner, and while he is not bound to continue that duty permanently he must see that reasonable notice is given if he intends no longer to perform it. Cummings v. Henninger, 28 Ariz. 207, 236 P. 701, 41 A.L.R. 207; Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521; Cavanagh v. Hoboken L. & I. Co., 93 N.J.

166

L. 163, 107 A. 414, 5 A.L.R. 933; Brown v. Erie R. R. Co., 87 N.J.L. 487, 91 A. 1023.

We are of the opinion that the complaint states a cause of action and that the trial court was in error in dismissing plaintiff's complaint. For the reasons stated, the judgment is reversed and the cause remanded with instructions to overrule defendant's motion to dismiss, and to reinstate plaintiff's complaint.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.