**McDONOUGH v. BUCKEYE S. S. CO.**
Civ. No. 26505.

United States District Court,
N. D. Ohio, E. D.
Aug. 22, 1951.

474

Harrison, Spangenberg & Hull, Cleveland, Ohio, for plaintiff.

McCreary, Hinslea & Ray, Cleveland, Ohio, for defendant.

FREED, District Judge.

Plaintiff, as Administrator of the Estate of William F. Kerr, instituted this action for the death of Kerr seeking to recover compensation under the Jones Act, Title 46 U.S.C.A. § 688. The cause was submitted to the Court without a jury.

In denying liability, defendant presents several problems to the Court which will require detailed comments on the evidence

as they are discussed below. A brief outline of the facts at this point will suffice.

Kerr, the decedent, was a seaman on defendant's ship, the Andrew Upson. On April 24, 1947 the Upson docked at the Corrigan-McKinney Works of the Republic Steel Co., Cleveland, Ohio, and certain members of the crew including Kerr were given shore leave. Kerr returned to the dock that evening in such a state of intoxication as to prompt the dock guard, a Republic employee, to deny him access through the gate to the dock area. The portion of the dock which Kerr would have to traverse was in close proximity to the water. It was not protected by guardrails and naturally presented a danger. The guard detained Kerr until another seaman, one Clarence Cox, appeared at the gate. Cox being sober, Kerr was turned over to him to be escorted safely to their ship. When almost halfway to the ship, Kerr staggered and fell twice. The second time he refused to rise when admonished by Cox and, being physically unable to lift his charge, Cox left Kerr and returned to the ship. Aboard ship, Cox informed the mate of his inability to bring Kerr to the ship and a search party was dispatched somewhat later. The result of this search, as well as that of Republic's employees later, produced nothing more than Kerr's hat. Kerr's body was discovered in the river about two weeks later—death having been caused by drowning about the time that the above events transpired.

Plaintiff's cause of action is predicated on the negligence of Cox.

Defendant stresses numerous contentions against plaintiff's right of recovery. The claims are made that Kerr was not acting "in the course of his employment" at the time of his ill-fated presence on the dock so as bring the claim for his wrongful death within the provisions of the Jones Act; that Cox was not negligent in any respect in caring for Kerr; that his negligence, if any, was not the proximate cause of Kerr's death; that Cox was not acting within the course and scope of his employment. It is asserted that he was a volunteer in his individual capacity to assist Kerr in his predicament, caused by Kerr's own misconduct.

■ The Jones Act affords a right of recovery to seamen for injuries received as a result of the master's negligence. It protects the seaman whether he is on land or on the water so long as he is in the course of his employment. O'Donnell v. Great Lakes Dredge & Dock Co., 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596 "A man is acting in the course of his employment when coming to or returning from work, and upon the employer's premises or upon adjacent property if approaching by a customary route." Marceau v. Great Lakes Transit Corp., 2 Cir., 1945, 146 F.2d 416, 418. See also Walton v. Continental S. S. Co., D.C.1946, 66 F.Supp. 836.

Defendant has expressed great concern as to the consequences, should this Court find and impose a continuing and affirmative duty upon shipowners and masters to supply escorts or other protection to intoxicated seamen returning to their vessel. Although the admitted disposition of seamen to drunkenness—an occupational predilection—may be urged as the foundation for such a duty, this Court need not express an opinion as to such duty in the instant case.

■ It is clear, from the testimony of Thomas Olson, the third mate of the Andrew Upson, that defendant's employees were authorized to assume control of seamen who were too intoxicated to be allowed on the dock alone. Olson related that the customary and established practice—at the various Great Lakes docks—was for the dock guard to detain these men and either turn them over to a sober shipmate if one appeared or else call the ship. The officer in charge of the ship then would personally go ashore or would send some one else to assist the seaman. This procedure was known to defendant and was the accepted and recognized practice invariably followed.

■ Negligence, basically, is the failure to conform to the standard of care imposed by a duty. Assuming that defendant owed no duty to help Kerr reach the ship from the gate, the authorities are clearly of the view that one who voluntarily takes charge

of a helpless person must exercise reasonable care for his welfare and safety. Black v. New York, N. H. & H. R. Co., 1907, 193 Mass. 448, 79 N.E. 797, 7 L.R.A.,N.S., 148; Owl Drug Co. v. Crandall, 1938, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521; Slater v. Illinois Cent. R. Co., C.C.1911, 209 F. 480. See Annotations 5 A.L.R. 513; 120 A.L.R. 1525. The rule has been embodied in the Restatement of Torts § 324. It does not place an onerous burden on shipmasters to require them to exercise ordinary care when they do undertake to escort an intoxicated seaman from a point of safety, past a danger zone, to the confines of the ship. This is particularly true—as in this case—when such assistance is rendered for the benefit of the shipowner as well as the seaman.

 Did Cox exercise ordinary care for Kerr's safety? Ordinary care is that care which the reasonable man of ordinary prudence would exercise in light of the magnitude of the risk of harm created, the utility of the actor's conduct, and all the surrounding circumstances. "The failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done" is the test by which we measure the actor's conduct. Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610.

The contention that Cox, the escort, was negligent in leaving Kerr unattended on the dock is amply supported by the evidence. This negligence of Cox was further enhanced by his subsequent negligent conduct.

There is little dispute between the parties concerning the facts. The dock was but about eighteen feet wide from the water's edge inward to some railroad tracks. The outer edge was flush and unguarded. Lights comparable to street lights illuminated the dock to a sufficient degree that one, looking from the ship, probably could see the area where Kerr fell. The total distance from the gatehouse to the ship was approximately 1200 to 1500 feet.

When Kerr reported at the gate shortly after midnight, his intoxication was readily apparent to the guard. The coroner's testimony established that he was in that stage of intoxication commonly termed "confusion" and manifested by a staggering gait and slurred speech.

 Cox came to the gate shortly after Kerr and upon being requested to help take Kerr to the ship he consented. The two men left the gatehouse and proceeded over the dock to the ship. When they had traveled about half the distance Kerr commenced to stagger more noticeably and fell. Kerr rose, with Cox' assistance, and together they moved some fifty to one hundred feet further along toward the ship. This part of the journey produced some verbal altercation between the parties and caused a reaction in Kerr which prompted him to break away, fall, and refuse to get up at Cox' insistence. Cox was unable to lift Kerr from his prone position and so proceeded onward to the vessel at a pace slightly faster than normal. Kerr was lying closer to the tracks than the river as Cox departed.

The ship was then being prepared to be shifted along the dock. Olson, who was in charge of the ship's operations, was standing on the vessel's deck, twenty to twenty-five feet from the dock. At least one member of the crew was standing on the dock ready to handle the ship's lines. Cox, when he reached the ship and while still on the dock, failed to summon assistance, said nothing to anyone, but proceeded from the stern of the vessel to a point near mid-ship where a Hulett unloader lifted him from the dock to the ship. Cox then reported that he was unable to get Kerr back to the boat and that Kerr was "drunk". Although the shifting operation had then ceased and men could have been dispatched instantly, Cox did not inform the ship's officers of Kerr's dangerous predicament. Olson went below and designated Kerr's immediate superior to go ashore. Upon Olson's return from the engine room to the deck, the shifting again commenced. As a consequence, five or ten minutes elapsed before the shifting ceased and the searcher could get ashore on his mission.

In view of the precarious position of Kerr, permitted to remain unattended upon

a dock but eighteen feet wide, the conclusion is inescapable that Cox disregarded his duty and failed to act as a reasonable man of ordinary prudence. The entire chain of events discloses a complacent disregard for the safety of Kerr. The delay of sending assistance to Kerr, resulting from the calloused attitude of Cox, could have been avoided with a minimum of effort and inconvenience. Cox abandoned Kerr in a helpless state wholly oblivious to his apparent dangerous position. He did not call for help immediately, but contented himself by reporting to the third mate without fully informing him of the immediate peril of Kerr. His entire conduct, in the opinion of this Court, was actionable negligence.

Defendant has taken the position that even if there was negligence, it would be conjecture and speculation to say that such acts were the proximate cause of the injuries suffered.

■ Modern decisions display great liberality in the construction of the Jones Act and the Federal Employers' Liability Act 45 U.S.C.A. § 51 et seq., in respect of proof of negligence and causation. "Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." Lavender v. Kurn, 1946, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916; See also Reck v. Pacific Atlantic S. S. Co., 2 Cir., 1950, 180 F.2d 866; Casey v. American Export Lines, 2 Cir., 1949, 173 F.2d 324; Sadler v. Pennsylvania R. Co., 4 Cir., 1947, 159 F.2d 784. Cf. Cleveland-Cliffs Iron Co. v. Martini, 6 Cir., 1938, 96 F.2d 632; Russell v. Merchants & Miners Transportation Co., D.C. 1937, 19 F.Supp. 349.

■ It is difficult to conceive that any inference is as reasonable as the one which points to the conclusion that the negligence of Cox was the proximate cause of Kerr's death. There is no suggestion of suicide or foul play—the little explanation available is all to the contrary.

■ It was pointed out above that Kerr was within the course of his employment. Cox, in taking charge of Kerr was acting in line with the well established and recognized practice known and acquiesced in by the defendant. Obviously therefore, that Cox was acting within the course and scope of his employment, so as to charge the defendant with liability, cannot be doubted. Wong Bar v. Suburban Petroleum Transport, Inc., 2 Cir., 1941, 119 F.2d 745, is convincing authority that an act of a servant which is in furtherance of the master's interest, is an act in the course of and within the scope of his employment. See also Nelson v. American-West African Line, 2 Cir., 1936, 86 F.2d 730; Restatement of Agency §§ 228, 229.

■ It is urged by defendant that the plaintiff is precluded from recovery because of decedent's own misconduct. The citations offered in support of this position concern the right of a seaman to recover maintenance and cure when the injuries received were caused by his own misconduct. The implication by defendant that the case of The S. S. Berwindglen, 1 Cir., 1937, 88 F.2d 125, is controlling because of a similar factual situation, is misleading. There the trial court found no negligence on the part of the shipowner but awarded maintenance and cure. This award was reversed because the injuries were *caused solely* by the seaman's own misconduct. As stated in Black v. New York, N. H. & H. R. Co., supra [193 Mass. 448, 79 N.E. 799], the fundamental principle "is that the plaintiff's condition, resulting from his prior negligence or wrong, is not a direct and proximate cause of the latter injury, inflicted by one who acts independently, with knowledge of this condition and in reference to it." When one undertakes to aid a helpless person, his duty is measured in terms of the risk created; it is of no consequence whether the person is helpless as a result of his own misconduct or from other causes. Assistance need not be volunteered.

The parties are not in disagreement on the various items which constitute the pecuniary loss to the beneficiaries. The additional request of plaintiff for interest

prior to the date of judgment will be denied. Cleveland Tankers v. Tierney, 6 Cir., 1948, 169 F.2d 622. See also Louisiana & Arkansas Ry. Co. v. Pratt, 5 Cir., 1944, 142 F.2d 847, 153 A.L.R. 851; Casey v. American Export Lines, supra.

Judgment will therefore be rendered for the plaintiff in the sum of $5450 with interest from date of judgment.