**UNITED STATES of America,**
**Appellant,**

v.

**Margaret Elizabeth CLINE, as surviving wife of Robert Herrick Cline, Deceased; Platt Cline, as Guardian of the Estates of Robert Herrick Cline, II, and Kelly Michael Cline, Appellees.**

**No. 22725.**

United States Court of Appeals
Ninth Circuit.

May 2, 1969.

---

1338

Carl Eardley (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Phoenix, Ariz., Edwin L. Weisl, Jr., Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., for appellant.

Harry Mangum (argued), of Mangum, Wall & Stoops, Flagstaff, Ariz., for appellees.

Before JERTBERG, DUNIWAY and CARTER, Circuit Judges.

JERTBERG, Circuit Judge:

Before us is an appeal from a judgment against the United States in the amount of $389,390.15, and in favor of the surviving wife and the guardian of the estates of two minor children of Robert Herrick Cline, deceased, arising out of the death of Cline, by drowning, proximately caused by the negligence of employees of the United States.

Jurisdiction of the District Court is conferred by the Federal Tort Claims Act, 28 U.S.C. § 1346, and this Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294.

Undisputed facts preliminary to the tragic drowning of Cline on September 1, 1965, may be summarized as follows:

The drowning occurred in water reservoir No. 1, approximately six acres in size, located on the Navajo Army Depot, a United States military installation in Coconino County, Arizona. The reservoir was infested with a heavy growth of weeds. Efforts to eradicate the weeds by the use of a weed cutter affixed to a raft proved unsuccessful, so in the latter part of August, 1965, the Government engaged the services of the Magna Corporation of California to eradicate the weeds through the use of chemical solutions designed for such purposes.

While one Giles, an employee of the Magna Corporation, and one McKissick, an employee of the Depot, were transporting two metal tanks containing the chemical solutions on the weed-cutter raft to a point in the reservoir where the application of the chemical solutions was to be made, the tanks slipped, the raft capsized, and the tanks sank to the bottom of the reservoir, a depth of approximately twenty feet. Subsequently a plastic bottle was anchored as a marker buoy in the area where the tanks sank. Officials of the Depot concluded to secure the services of a diver to locate the tanks and to fasten a line to them so that they might be raised and returned to shore.

At the time of the sinking of the tanks, and for a period of several years prior thereto, the Sheriff of Coconino County maintained a rescue unit composed of volunteers who aided the Sheriff in his effort to recover victims of drowning accidents. The Sheriff had acquired scuba divers' equipment consisting of wet-suits, flippers, air tanks, masks, helmets, weight belts and related accessories. The members of the Unit were volunteers of varying experience as scuba divers. Among the volunteers of the Unit was Cline, who had been a member of the Unit for several years. Cline was a newspaper employee, and scuba diving was an avocation of Cline's.

On reaching the conclusion that the services of a diver should be secured, Depot officials contacted the Sheriff of Coconino County. They were advised by the Sheriff that his regular diver was not available but that the services of Cline might be secured. After discussions with Cline concerning the problem, Cline agreed to undertake the assignment for $25.00.

The events occurring on the date of Cline's drowning, substantially derived from the "Statement of Facts" prepared by the district court, and in the light most favorable to support the judgment, may be summarized as follows:

Cline, accompanied by his wife and two children, arrived at the reservoir site about 2:00 p. m., on September 1, 1965, with the scuba diving equipment borrowed from the County Sheriff, which consisted of a wet-suit, two oxygen tanks, a face mask, and other equipment.

The officials of the Depot furnished: Two row boats which were lashed together to make up a landing platform from which the diver could operate;[1] an anchor; an anchor line; a rope safety line some thirty to forty feet long; and two vest-type life preservers.

On the platform to assist Cline was Giles, the employee of the Magna Corporation, and Depot employee, McKissick.

---

[1] One boat was twelve feet long; the other, fourteen feet long, was equipped with an outboard motor.

Cline, Giles and McKissick embarked in the lashed boats, with McKissick operating the outboard motor. McKissick was experienced in handling motor boats, but had had no experience in operating two boats lashed together. McKissick maneuvered the platform to the general area where the tanks were thought to be located, marked by the plastic bottle buoy. When the platform arrived at its destination, a strong wind was blowing, and McKissick anchored the platform downwind from the bottle buoy. Cline thereupon completed equipping himself with the scuba diving equipment borrowed from the Sheriff and made two shallow, semi-circular passes over the general area, resting at the platform at the conclusion of each dive. The record is inconclusive as to whether Cline used the rope safety line on the first two passes. The wind continued to blow briskly. The temperature of the water was approximately forty-three degrees.

On the third dive, Cline rejected the use of the safety line. Shortly after submerging Cline suddenly surfaced at a point twenty to thirty feet from the platform and called to the occupants that he was in trouble. Giles thereupon dove into the water, without the safety line, and swam to the aid of Cline. McKissick weighed anchor and the platform drifted with the wind. McKissick started the outboard motor and attempted to maneuver the platform upwind, closer to Cline and Giles. As he approached the two in the water, McKissick cut the motor off and attempted to throw a safety line toward Cline and Giles but the wind interfered. The platform started to drift away. McKissick again started the motor and attempted to maneuver the platform closer to the two men in the water. McKissick then threw his own life jacket toward them, and again the wind interfered, and the platform continued to drift. By this time Giles was becoming exhausted holding Cline afloat. Giles released Cline, who sank into the water, and Giles struggled toward the platform where he was assisted upon it by McKissick.

Another Depot employee by the name of Patterson, who was on the shore along with other Depot employees and spectators some fifty or sixty feet away from the diving operations, swam out to the general vicinity of the place where Cline disappeared. He was able to grasp the safety rope which was trailing from the platform, and attempted to reach the spot where Cline sank, which spot was marked by large rolling bubbles ascending to the surface. The platform continued to drift and Patterson became exhausted trying to stay afloat, and to hold the safety line, but he was able to pull himself to the platform but could not climb on it. He was taken to shore by being pulled along adjacent to the platform.

McKissick returned with another Depot employee on the platform, to the same area, and both dove for Cline without success. Cline's body was recovered later the same evening through grappling and diving operations.

The autopsy revealed that Cline's death was caused by asphyxiation, due to drowning.

In its formal findings of fact the district court, *inter alia*, found:

(a) That for a consideration of $25.00, Cline agreed to perform the services of a scuba diver in the recovery of the two submerged tanks;

(b) Cline provided the scuba diving equipment necessary to the operation, which he had secured from the Coconino County Sheriff;

(c) Cline was not an "expert" nor experienced scuba diver;

(d) The Depot officials made no thorough inquiry as to Cline's qualifications as a scuba diver;

(e) That Depot officials recognized Cline to have been in a position of peril in the water, and attempted to rescue Cline;

(f) That Cline drowned in the course of his attempts to locate the two submerged tanks;

(g) That the Depot furnished all of the equipment used in the diving opera-

tions, except the scuba diving equipment furnished by Cline, and furnished the personnel to assist Cline in the operation; and

(h) That the Depot officials retained, or assumed, the direction, control and supervision of the recovery operations.

In its conclusions of law the district court concluded, *inter alia*:

(a) Cline was an independent contractor, with Navajo Army Ordnance Depot as contractee;

(b) That the contractee owed a duty to Cline to exercise reasonable care in the supervision and control of the work in which Cline was engaged;

(c) That the contractee was negligent in assuming Cline was an "expert" or experienced scuba diver, without inquiry as to his experience and expertise;

(d) That the equipment furnished by the contractee was neither safe nor adequate;

(e) That the personnel furnished by the contractee, to assist Cline in the diving operations, were incompetent to perform the duties assigned to them and when they observed Cline to be in a position of peril, they were negligent in undertaking such assistance; and

(f) That Cline was not negligent in the conduct of his maneuvers, and that Cline was not negligent in failing to use the inadequate safety line through murky, weed infested waters.

Appellant's specification of errors is:

(1) That the court erred in finding:

(a) That Cline was an amateur scuba diver, and that the Depot was negligent in providing men and equipment to help Cline and that this negligence caused Cline's death;

(b) That the Depot was negligent in attempting the rescue;

(c) That Cline was not negligent in the conduct of his maneuvers.

(2) That the award of damages was excessive.

Before further discussion we shall consider the relevant law of Arizona applicable, or conceivably applicable, to the facts and circumstances of this case. We do this because of the following statement appearing in the Memorandum of Decision of the district court:

"Under the circumstances of the instant case, it makes little difference whether liability is founded upon the contractee-independent contractor relationship, the Good Samaritan Doctrine, effective at the time of the accident, or the Last Clear Chance Doctrine, asserted by plaintiff for the reason that liability of the defendant here is established on any one or all three bases."

Under the Federal Tort Claims Act, the United States may be held liable for personal injuries or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

■ The death here involved occurred in the State of Arizona. The law of that state, therefore, governs in determining whether a private person, and therefore the United States, would be liable under the circumstances of this case.

■ According to Arizona law a cause of action founded on negligence must be based upon a showing 1) that the defendant had a duty to protect the plaintiff from injury of which he complains; 2) the defendant failed to perform that duty; and 3) that such failure proximately caused the plaintiff's injury. Roberson et al. v. United States, 382 F.2d 714 (9th Cir. 1967); Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962).

■ The general rule is that a contractee is not responsible for the safety of an independent contractor or liable for his negligence. See Kirk v. United States, 270 F.2d 110 (9th Cir. 1959); Dixon v. United States, 296 F.2d 556

(8th Cir. 1961). Arizona likewise follows this rule. See Throop v. F. E. Young & Co., 94 Ariz. 146, 382 P.2d 560 (1963).

■ A generally recognized exception to the above rule is followed in instances where the contractee retains or assumes the exercise of control over some aspects of the contracted work. Under such exception the contractee owes a duty to the contractor to exercise reasonable care in respect to the phases of the contracted work over which the contractee retains or assumes the right of control. Welker v. Kennecott Copper Co., 1 Ariz.App. 395, 403 P.2d 330 (1965); Fluor Corp. v. Sykes, 3 Ariz.App. 211, 413 P.2d 270 (1966); Restatement of Torts 2d § 414.

■■ The Good Samaritan Doctrine is recognized in Arizona. Taylor v. Roosevelt Irr. Dist., 72 Ariz. 160, 232 P.2d 107 (1951); Owl Drug Co. v. Crandall et al., 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521 (1938). The doctrine is also applicable to suits under the Federal Tort Claims Act. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); Restatement of Torts 2d § 323.

■ The Last Clear Chance Doctrine is likewise recognized and applied by the Courts of Arizona. Odekirk v. Austin, 90 Ariz. 97, 366 P.2d 80 (1961); Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954); Casey v. Marshall, 64 Ariz. 232, 168 P.2d 240 (1946).

■ Apparently under Arizona law the trier of fact has authority to find for the plaintiff in a tort action even though there is, and it finds that there is, contributory negligence. Layton v. Rocha, 90 Ariz. 369, 368 P.2d 444 (1962); Lutz v. Faith, 95 Ariz. 40, 386 P.2d 85 (1963). In Layton v. Rocha, *supra*, the Supreme Court of Arizona held that it is not erroneous for the trial court to instruct a jury that if it finds that plaintiff was contributorily negligent, then its verdict *may* be for the defendant. The court stated at p. 370 of 90 Ariz., at p. 445 of 368 P.2d: "Even though the undisputed evidence shows that plaintiff's negligence did as a fact contribute to the injury the jury *may* find in favor of the plaintiff and this court cannot direct a new trial." *Layton* was cited with approval in Boies v. Cole, 99 Ariz. 198, 407 P.2d 917 (1965). The court stated at p. 921 of 407 P.2d: "In Arizona contributory negligence of the slightest degree if it is a proximate cause of the accident 'may' or 'should' defeat recovery by a plaintiff."

■ Basically appellant contends that it owed no duty of care to Cline since, under the arrangements made with him to retrieve the tanks, Cline was an independent contractor for whose safety the appellant was not responsible. It is true that the district court concluded "Cline was an independent contractor, with Navajo Army Ordnance Depot as contractee." In this case such finding by the district court does not shield the appellant from liability.

■ The arrangement made between Cline and appellant was extremely informal. The conversations between Cline and appellant's employees leading up to Cline's expressed willingness to undertake the retrieval of the tanks for $25.00 were brief and related primarily to answering Cline's questions as to the weight and size of the tanks, compensation, and the scuba diving equipment to be obtained by him from the Sheriff's office. Nothing was said about which party would furnish the equipment which would be required on the surface of the water, or the personnel which would be required to man the same. Clearly, the arrangement with Cline contemplated that such equipment and personnel would be furnished by appellant. In fact, such equipment and personnel were furnished and were under the control and supervision of appellant. Cline's only undertaking was to locate the submerged tanks and perform such underwater activities as might be required to retrieve the same. The facts and circumstances of this case invoke the application of the exception to the general rule that a contractee is not responsible for the safety of an inde-

pendent contractor. In our view appellant owed a duty to Cline to exercise reasonable care in the furnishing of surface water equipment and personnel to man the same. This duty was accentuated by the fact that Cline's undertaking was, or in the course of its performance might became, hazardous.

The district court concluded, *inter alia*, appellant breached such duty by furnishing unsafe and inadequate equipment and incompetent and inexperienced personnel to man the same, and that such failure on the part of appellant constituted negligence which proximately caused Cline's death.

The evidence before the district judge consisted of the testimony of a number of live witnesses, depositions, and exhibits. In many instances the evidence before the district judge was conflicting. Trial was to the court, sitting without a jury.

Rule 52(a), Federal Rules of Civil Procedure, provides in relevant part:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In our view the evidence is sufficient to compel us to respect the provisions of Rule 52(a).

We now consider appellant's attack on the district court's findings or conclusions that Cline was not negligent in the conduct of his maneuvers, and that Cline was not an "expert" or experienced scuba diver.

In its amended answer appellant alleged, as an affirmative defense, as follows:

"By way of a second separate and affirmative defense, the United States of America, defendant, alleges that if the plaintiff, Margaret Elizabeth Cline, sustained any damages by reason of the death of Robert Herrick Cline, the recovery for the same is barred by reason of the fact that the death of the said Robert Herrick Cline was proximately caused by his own negligence or contributory negligence."

We have carefully reviewed the evidence, in respect to the findings of fact which appellant attacks, in the light most favorable to support the judgment. As previously noted, the evidence consisted of testimony of a number of live witnesses, depositions and exhibits. In many instances the testimony was conflicting. The trial court had the opportunity to see and hear the witnesses and to judge of their credibility. There is sufficient evidence in the record to support the attacked findings. We are unable to say that such findings are clearly erroneous.

We now consider appellant's specification of error that the award was excessive.

We agree with the appellant that the award made by the district judge is large. In light of the facts in this case respecting damages, the size of the verdict does not shock our conscience. Appellant does not claim that the amount is so large as to shock one's conscience or to indicate the trial judge was motivated by passion or prejudice. We are unable to say that the district court abused its discretion in fixing the award at the amount it did.

Appellant's final contention is that the district court erred in not reducing the award by the amount of income taxes that would accrue over Cline's life expectancy. This contention was not presented to or passed upon by the district court. We need not and do not pass upon it on this appeal. Incidentally, we note that the deduction for future income taxes was not mentioned in the stipulation which the parties entered into respecting a formula for calculating damages, even though the stipulation did include deduction of projected living expenses.

The judgment appealed from is affirmed.