DOWNEY, Chief Judge,
dissenting:
Appellee, Barnett Bank of Winter Park, sued appellants, Mr. and Mrs. Terry, on ■three promissory notes. Appellants filed numerous affirmative defenses to the complaint and a three count counterclaim, seeking damages against the Bank. The trial court dismissed appellants’ counterclaim for failure to state a cause of action, struck a number of appellants’ affirmative defenses and entered summary judgment for appel-lee. The orders dismissing the counterclaim and striking the affirmative defenses and the granting of summary judgment and final judgment are the judicial acts assigned as error on this appeal. Thus, we are concerned here primarily with the adequacy of pleading issues and not with the merits of this case. Accordingly, a recitation of the facts as they are alleged in the counterclaim is appropriate.
In December 1971 Mr. Terry (hereinafter Terry) presented a written proposal to ap-pellee (The Bank) suggesting that he be allowed to borrow $450,000 at the Bank’s base rate of interest, which then was 5%. The Bank was apprised of the purpose of the loan which was to allow Terry to purchase Barnett Mortgage Trust Bonds at a price which would yield an income of approximately 8% per annum. These bonds were to collateralize the loan. The suggestion was approved and between December 30, 1971, and January 5, 1972, Mr. and Mrs. Terry executed three promissory notes to-talling $445,807.31 and pledged various shares of stock and debentures with The Bank as collateral. A large block of the collateralized stock was subsequently sold and 4000 Barnett Mortgage' Trust Bonds were purchased to replace the stock.
Commencing January 19, 1972, The Bank voluntarily undertook to notify Terry of changes in The Bank’s base lending rate and The Bank continued this practice until May 1973. During that period The Bank notified Terry of eight different interest rate changes. After being notified in May 1973 that the interest rate was increased to 7% Terry received no further interest rate change notices from The Bank. However, sometime after May 1973, as a result of new guidelines on interest rates being issued by the Committee on Interest and Dividends of the Cost of Living Council, unbeknown to the Terrys, The Bank reclassified the Terry Loan by changing the interest rate being charged from the base lending rate charged by The Bank to the “Big Prime” rate which is the rate of interest charged to large borrowers who do business with the banks in the big national money centers. Shortly after this reclassification the Big Prime rate commenced to rise until on August 29, 1973, it reached 9%%.
The Terrys allege that they came to rely upon notification from The Bank of changes in the interest rate. The Terrys’ plan was that, upon notification that the interest rate of The Bank approached the yield the Terrys received from the Barnett Mortgage Trust Bonds, the bonds would have been sold and the debt to The Bank paid with a profit remaining for the Terrys. However, the counterclaim alleged, The Bank ceased notifying the Terrys after May 1973 of changes in the interest rate, reclassified their loan, and as a consequence the Terrys believed their interest was fixed at 7%. As a matter of fact, the interest rate charged the Terrys rose to a point where the difference between the loaned and invested rates no longer provided a reasonable return.
The thrust of Count I of the Terrys’ counterclaim is that The Bank voluntarily assumed a duty by sending the Terrys notice of the interest rate change over a period of some sixteen months and that the Terrys relied upon that course of conduct; The Bank having once assumed performance of that duty was required to use due care and, if The Bank chose to stop so performing, it was required to notify the Terrys. There is no contention that The Bank was required in the first instance to *461 notify the Terrys of these interest rate changes; that course of conduct was voluntarily assumed by The Bank, as appellee describes it, “as a courtesy.”
Appellee counters appellants’ argument by pointing out that The Bank had never agreed to notify the Terrys of rate changes; it had no duty to do so; and if it gratuitously commenced notification it was entitled to abandon the practice whenever it chose to do so.
The authorities seem to hold that one who, with no obligation to do so, voluntarily assumes a duty must perform that duty with reasonable care and he may cease to perform that duty at any time after giving the recipient thereof reasonable notice of his intention to no longer perform the duty.
In Taylor v. Roosevelt Irr. Dist., 72 Ariz. 160, 232 P.2d 107 (1951), an Irrigation District without any duty to do so erected a fence around a canal. The fence kept plaintiff’s cattle out of the canal and, thus, plaintiff came to rely on that protection. The District allowed the fence to be partially destroyed without giving plaintiff any notice thereof. Plaintiffs’ cattle drowned in the canal. In holding that plaintiff’s complaint stated a cause of action, the court said:
“It is the law that if one who is under no duty to another to protect him in person or property voluntarily assumes such a duty, he must perform it in a reasonably careful manner, and while he is not bound to continue that duty permanently he must see that reasonable notice is given if he intends no longer to perform it.” 232 P.2d at 110.
In Raffa v. The Dania Bank, 321 So.2d 83 (Fla. 4th DCA 1975), The Bank repossessed Raffa’s automobile because she was delinquent in her loan payments. Raffa sued The Bank for conversion contending, among other things, that The Bank had improperly repossessed the car without having first given her specific notice of the overdue debt or of their intention to retake the automobile. The rationale of this contention was that The Bank had accepted other late payments without repossessing the automobile, and thus before changing its course of conduct she was entitled to notice. In holding that such circumstances created an issue of fact precluding summary judgment, the court pointed out:
“In Ford Motor Credit Co. v. Waters, Fla.App.1973, 273 So.2d 96, 99-100, the Court, following Commercial Credit Co. v. Willis, 126 Fla. 444, 171 So. 304 (1936), held that past acceptances of late payments without repossession might give rise to a right by the purchaser to rely upon that course of conduct and a concomitant duty by the creditor to notify the buyer prior to his changing the pattern by retaking the property.” 321 So.2d at 85, 86.
Finally, Prosser, Law of Torts, Ch. 10, § 54 (3rd ed. 1964), concludes that one who voluntarily assumes a duty may discontinue his performance upon notice of his intention to do so.
Appellee contends the foregoing authorities are not applicable here but it seems to me that they are helpful. I feel that a cause of action was stated in Count I of the counterclaim based upon the foregoing principle. The motion to dismiss admitted the allegations of the counterclaim and, thus, the motion to dismiss Count I should have been denied. All of appellant’s arguments regarding the other two counts of the counterclaim are without merit.
Turning now to the stricken affirmative defenses, it appears that some of them were improperly stricken.
Defendants’ third affirmative defense in their amended answer filed January 12, 1976, alleges in substance that the plaintiff at all times retained possession of the proceeds of the alleged transaction, and further retained the collateral security “to the value of and exceeding the amount of the alleged indebtedness.” I gather from ap-pellee’s brief that on the facts of the case appellee feels appellants will not be able to prove that defense; but that, of course, is not the test on the motion to strike. As pleaded it appears to state a good defense.
*462 In affirmative defense No. 12 it is alleged that no consideration was ever received by Mrs. Terry — Mr. Terry also alleges the same affirmative defense. Appellee argues that, if her co-maker, Mr. Terry, received consideration then Mrs. Terry is bound. But on motion to strike this pleading where both Mr. and Mrs. Terry allege lack of consideration, it seems to me appellee’s argument is premature and the defense is good.
By affirmative defense No. 13 Mrs. Terry alleges she was simply an accommodation party for The Bank to clear title to the collateral and was not intended to be liable on the instrument. Once again at this stage of the pleadings this defense must stand. Gehrig v. Ray, 332 So.2d 703 (Fla. 1st DCA 1976).
Appellants also complain that the affidavits they filed in opposition to The Bank’s motion for summary judgment show they have another affirmative defense involving a violation of the U.C.C. in that The Bank transferred the collateral in question without notifying the Terrys. This matter has never been presented to the trial court on motion to file further amended affirmative defenses; hence, it is premature for us to pass on this question.
Accordingly, I would reverse the judgment appealed from and remand the cause with directions to reinstate Count I of the appellants’ amended counterclaim and affirmative defenses Nos. 3, 12 and 13.
Under these circumstances the summary judgment should be vacated without prejudice, of course, to further motion for summary judgment after the pleadings have been settled.