[Civil No. 2645.  Filed December 5, 1927.]

[261 Pac. 629.]

FAIRFAX BURNSIDE, a Minor, by His Guardian ad Litem, FAIRFAX BURNSIDE, Appellant, v. DOUGLAS SCHOOL DISTRICT No. 27 OF COCHISE COUNTY et al., Appellees.

Mr. John Wilson Ross, for Appellant.

Mr. James T. Gentry, County Attorney, and Messrs. Knapp, Boyle & Pickett, for Appellees.

LOCKWOOD, J.—Fairfax Burnside, a minor, by his guardian *ad litem,* filed a petition for a writ of *mandamus* in the superior court of Cochise county, praying that the trustees of school district No. 27 of Cochise county be compelled to admit him to attendance at school in a certain building devoted to high school instruction in the city of Douglas. The petition set up, in substance, that the plaintiff was a member of the African race, and that he was debarred ad-

mission to and instruction in said building solely upon that ground. The answer was to the effect that on account of the dissatisfaction, turmoil and discord caused by the attendance of the plaintiff and two other children of such race in the building to which he claimed admission for instruction, the defendants under the provisions of paragraph 2750, Revised Statutes of Arizona of 1913, Civil Code, did debar him from admission to and instruction therein, but provided for him and others in his situation a separate room in a different building under conditions which gave him all the facilities, advantages and opportunities for education given to any other pupil of the high school, and that the district was ready and willing at all times to provide him every facility granted to any other children in the district to secure a high school education. The case was tried before the court, which made its findings of fact and on those findings entered judgment quashing the alternative writ before issued, and denying a peremptory writ. After motion for a new trial was made and overruled, plaintiff appealed to this court.

There are nine assignments of error, some raising technical matters of procedure, and others questions of serious import to the various boards of trustees of the state of Arizona, and to many of the children of the state. We will consider these assignments in such manner as it seems to us will best dispose of the case upon its merits.

The real issue is as to the extent of the powers of boards of trustees to segregate pupils in high schools when the basis of such segregation is racial. Plaintiff does not deny that the legislature of the state of Arizona may, without violation of any constitutional provision, provide for the segregation of the children of the Caucasian and African races within the public school system, provided always that equal accommodations and facilities be supplied to the pupils of both

races. *Dameron* v. *Bayless,* 14 Ariz. 180, 126 Pac. 273; *Plessy* v. *Ferguson,* 163 U. S. 539, 41 L. Ed. 256, 16 Sup. Ct. Rep. 1138. It is his contention, however, that such power rests only in the legislature, and that boards of trustees have no authority for segregation on the ground of race except to the extent and in the manner that the legislature expressly provides, and further that such provision at the present time is found only in chapter 137, Session Laws of 1921, which amends subdivision 2, paragraph 2733, Revised Statutes of Arizona of 1913, Civil Code, prescribing the powers and duties of boards of trustees to read as follows:

"(2) To prescribe and enforce rules not inconsistent with law or those prescribed by the state board of education for their own government and the government of the schools. They shall segregate pupils of the African race from pupils of the Caucasian race in all schools other than high schools, and to that end are empowered to provide all accommodations made necessary by such segregation.

"Sec. 2. Whenever there shall be registered in any high school, union high school or county high school in the state of Arizona twenty-five or more pupils of the African race, the Board of Trustees of any such high school shall, upon petition of fifteen per cent of the school electors, as shown by the poll list at the last preceding annual school election, residing in the district, call an election to determine whether or not such pupils of the African race shall be segregated from the pupils of the Caucasian race. The question to be submitted, including the insertion therein of the estimated cost to the district of such segregation, shall be substantially in the following form: 'Are you in favor of segregating the pupils of the African race from the pupils of the Caucasian race on condition that the board of trustees shall provide equal accommodations and facilities for pupils of the African race as are now and may be hereafter provided for pupils of the Caucasian race; it being understood that the estimated cost of segregation at the present

time will be $——— over and above the cost of maintaining the school without such segregation.'

"In other respects the election shall be called and conducted under the same conditions as apply in the regular annual school election, except as to the time of holding the election, and that the notices shall state specifically the information necessary for voting intelligently on the question.

"If a majority of the electors voting at such election vote in favor of such segregation, then the school trustees of any such high school are hereby authorized and directed to segregate the pupils of the African race from the pupils of the Caucasian race, and shall provide equal accommodations and facilities for such pupils of the African race as are now and may be hereafter provided for the pupils of the Caucasian race in any such high school."

It is the contention of defendants on the other hand, that chapter 137, *supra,* refers only to certain special methods of segregation under the circumstances set forth in the chapter, and that boards of trustees have the optional right to segregate under the provisions of paragraph 2750, *supra,* which reads as follows:

"Boards of trustees must maintain all the schools established by them for a period of not less than eight months during each school year, and if the funds of the district are sufficient, they shall maintain them for a longer period, and as far as practicable with equal rights and privileges; *provided, that the board of trustees of any district may make such segregation of groups of pupils as they may deem advisable, and,* provided further, that the boards of trustees may maintain at the expense of the district such special schools during the vacation as may be deemed necessary for the benefit of the pupils of the district." (Italics ours.)

It will be observed that paragraph 2750 is much broader in its provisions in regard to segregation than chapter 137. The one refers only to segregation of pupils of the African race, makes such segregation

mandatory in the grade schools, and fixes a special method of determining the question of segregation in high schools which have twenty-five or more registered pupils of the African race; while the other provides generally that pupils may be segregated into groups whenever the trustees deem it advisable, without specifying any limitation as to the reason for such segregation. In other words, the legislature of Arizona in paragraph 2750, *supra*, has laid down as a matter of public policy that pupils may be segregated within the public schools on any reasonable grounds, and has vested in boards of trustees the power to determine when and under what circumstances such segregation may be made. That such a provision is constitutional cannot be doubted. As is well said in *People* v. *School Board*, 161 N. Y. 598, 48 L. R. A. 113, 56 N. E. 81:

"If the Legislature determined that it was wise for one class of pupils to be educated by themselves, there is nothing in the Constitution to deprive it of the right to so provide. It was the facilities for and the advantages of an education that it was required to furnish to all the children, and not that it should provide for them any particular class of associates while such education was being obtained. In this case, there is no claim that the relator's children were excluded from the common schools of the borough, but the claim is that they were excluded from one or more particular schools which they desired to attend and that they possessed the legal right to attend those schools, although they were given equal accommodations and advantages in another and separate school. We find nothing in the Constitution which deprived the school board of the proper management of the schools in its charge, or from determining where different classes of pupils should be educated, always providing, however, that the accommodations and facilities were equal for all. Nor is there anything in this provision of the Constitution which prevented the Legislature from exercising its discretion as to the best method of educating the different classes of

children in the state, whether it relates to separate classes as determined by nationality, color or ability, so long as it provides for all alike in the character and extent of the education which it furnished and the facilities for its acquirement."

Plaintiff, however, urges upon us that chapter 137, *supra,* deals specifically with the question of segregation on account of race, and limits such segregation in a certain manner, and that the general rule of statutory construction is that, whenever a statute limits a thing to be done in a particular manner, it necessarily includes in itself a negative, viz., that the thing shall not be done otherwise. 19 Cyc. 26, 27. If it were not for paragraph 2750, *supra,* the point would be well taken. We think, however, that the rule does not apply when there is another separate statute which expressly provides that the thing *may* be done in a different way.

It is a cardinal rule of statutory construction that different statutes are to be construed if possible so as to make both effective. *Marbury* v. *Madison,* 1 Cranch 137, 2 L. Ed. 60; *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D 94, 146 Pac. 494; *State* v. *Osborne,* 14 Ariz. 185, 125 Pac. 884; *Ex parte Mascolo,* 25 Cal. App. 92, 142 Pac. 903; *People* v. *Ramer,* 61 Colo. 422, 158 Pac. 146. Repeals by implication are not favored, nor is it sufficient to raise such implication that the subsequent law covers some of the cases provided for by the former statute. There must be plain, unavoidable and irreconcilable repugnancy between the two statutes. *Wood* v. *United States,* 16 Pet. 342, 10 L. Ed. 987; *Bank of British North America* v. *Cahn,* 79 Cal. 463, 21 Pac. 863; 36 Cyc. 1074. Chapter 137, *supra,* is an amendment of paragraph 2733, *supra,* which was a part of the 1913 Code, together with paragraph 2750. Evidently it was the intent of the legislature that paragraphs 2733 and 2750 as they originally existed were both to be given effect.

Therefore, unless the amendment to paragraph 2733 is utterly repugnant to paragraph 2750, no repeal of the latter will be presumed, and there is no express repeal. We can see no such repugnancy, and believe there are two methods of segregation provided by law —one a special segregation under chapter 137, *supra,* to be made in accordance with its terms; the other a much broader and general segregation to be made under the provisions of paragraph 2750, *supra.*

It will be noted on examining the answer of defendants that it contends that the plaintiff was excluded from the particular school building in question because his presence there, together with that of two other persons of the same race created such dissatisfaction, turmoil and discord among the other pupils that it tended to disturb the orderly conduct and efficient work of the school. It is true, undoubtedly, that the cause of dissatisfaction among the other pupils was based on the race of plaintiff, but, in view of the fact that he did not have a constitutional right to attend at any particular building in the district, but simply to secure an education on equivalent terms to those of the other pupils, we think it was clearly within the powers of the trustees under paragraph 2750, *supra,* for the purpose of promoting harmony and discipline within the school system, to provide for a group segregation, even though the ultimate cause of such trouble was plaintiff's race. Suppose, for instance, that during the recent war with Germany there had been in one of the school districts of Arizona a large number of pupils of German birth, and that such fact, as undoubtedly might have happened, created constant turmoil, discord and disturbance of discipline on the school grounds and even within the schoolroom. Would not the trustees under paragraph 2750 have had ample authority to segregate such children in a separate room or building, and to provide for their using the playgrounds at a time

when the other children were in their classrooms? It is, of course, an unfortunate thing that such a condition should arise in any school, but, when it exists, it is the duty of the trustees to meet the situation as it is, and to endeavor by every reasonable means in their power to alleviate it. If in their judgment under the circumstances of this case they thought segregation the best remedy, we cannot say it was an abuse of discretion.

Nor do we think paragraph 2779, Revised Statutes of Arizona of 1913, Civil Code, affects this right. This paragraph provides:

"2779. All pupils shall be promoted from the eighth grade of the common schools on certificate of promotion. . . . Such certificates shall admit the holders thereof to admittance to any high school in the state. . . . "

The plaintiff was entitled by his certificate of promotion to receive his high school education in the high school of School District No. 27 of Cochise county, but not necessarily in any *particular building* which was a part of such high school. A "high school" may be and frequently is composed of more than one building. The Phoenix union high school, for instance, has at least a dozen to fifteen buildings under separate roofs; yet all of the buildings constitute but one "high school." The words "high school," unless it clearly appears by the context they have some other meaning, always refer to *the organization for the purpose of imparting instruction,* and not to any particular structure used by such organization.

We hold, therefore, that it was within the powers of the board of trustees of the Douglas high school under the facts of this case to provide that plaintiff and the other two children of the same race should be segregated as pupils from the members of the Caucasian race attending high school, provided always

that the former were given accommodations and facilities for obtaining a high school education equivalent to those possessed by the latter in like circumstances. The findings of the trial court on this point were to the effect:

"The court further finds from the facts and evidence of this case that said room set aside for the use of plaintiff and other pupils of said high school was fully equipped with all the facilities, including a competent, efficient, and qualified teacher, that any other room used in said high school contained; that said plaintiff and other pupils assigned to said room were permitted to, and expected to, use and have at their commands, the same as all other children in said high school, all the equipment and facilities used for educational purposes in said high school."

We have examined the transcript of evidence, and it appears therefrom that the testimony fully supports this finding. The foregoing disposes of all the assignments of error which go to the merits of the case. There are several others affecting the procedure which we will consider.

Strictly speaking, it is probably true that the answer should have been made to the alternative writ, and not to the petition for the writ. Since, however, the writ contained no material allegations not found in the petition, we cannot see where plaintiff was prejudiced by the action of the trial court in refusing to strike the answer, even though such action was technically erroneous. Nor do we think the verification of the answer is insufficient. It is true that when the answer is a mere denial of the allegations of the complaint it has been held the verification should be to the effect, not only that the answer is true, but also that the complaint is untrue. Where, however, as in this case the real answer was an affirmative one on the merits, we think the verification sufficient so that the answer should not have been stricken on that ground.

It is further assigned as error that the court failed to make findings of fact on many of the material issues raised by the pleadings. Findings of fact were made and filed which are sufficient to support the judgment. Plaintiff made no request for any particular findings in the lower court, nor did he raise the alleged insufficiency of findings there. Under such circumstances the findings filed are sufficient, and the court will not on appeal consider an assignment that there should have been other findings. *Solomon* v. *Norton*, 2 Ariz. 100, 11 Pac. 108.

What we have said disposes of all the assignments. It appearing that there is no prejudicial error in the record, the judgment of the trial court is affirmed.

ROSS, C. J., and McALISTER, J., concur.