[Civil No. 3487.   Filed October 22, 1934.]

[36 Pac. (2d) 984.]

W. J. HARRISON, FRANK FERGUSON and R. N. THOMPSON, the Board of Trustees of Laguna School District, Appellants, v. J. H. RIDDLE, Appellee.

Mr. Glenn Copple and Mr. A. J. Eddy, for Appellants.

Mr. Fred L. Ingraham, for Appellee.

ROSS, C. J.—This action was brought by J. H. Riddle, as the parent of a child of school age in Laguna School District, Yuma county, against W. J. Harrison, Frank Ferguson and R. N. Thompson, the Board of Trustees of Laguna School District, to compel them to segregate the African pupils of said school district from the Caucasian pupils thereof and to provide all of the accommodations thereby made necessary. After a hearing and trial the alternative writ was made peremptory, and from the judgment the defendants have appealed.

The defendants justify their refusal or neglect to segregate on two grounds: (1) They say under the law it was discretionary with them whether they segregate or not, and (2) that their budget for the school year beginning in September, 1933, did not provide for the expense of such segregation, and that they were without funds for such purpose.

The first question involves the construction or interpretation of our statutes concerning the powers and duties of boards of trustees of grammar schools. Section 1011, Revised Code of 1928, provides:

"The powers and duties of the board of trustees of school districts are as follows: . . .

"2. The board shall prescribe and enforce rules not inconsistent with law or those prescribed by the state board of education for their own government and the government of the schools. They shall segregate pupils of the African race from pupils of the Caucasian race in all schools other than high schools, and provide all accommodations made necessary by such segregation."

The defendants argue that this should be construed merely as permissive; that the word "shall" should be given the meaning of the word "may," and the sentence made to read "may segregate" instead of "shall segregate." If it were ever open to such a construction, it can no longer receive it, for in *Burnside* v. *Douglas School District No. 27,* 33 Ariz. 1, 261 Pac. 629, we held the duty to segregate was mandatory. It is suggested that this pronouncement of the court was dictum inasmuch as this provision was not involved in that case. If this be conceded, nevertheless we are satisfied, both from the language employed and the history of the legislation, that the statement in that case of the character of the duty of the board is correct.

The first legislative suggestion concerning segregation is found in chapter 67, Laws of 1909, of the territorial legislature. Therein it was provided that "when they (the board) deem it advisable, they may segregate pupils of the African from pupils of the White races, and . . . provide all accommodations made necessary by such segregation," when the num-

ber of the former shall exceed eight in any school district.

In the Revised Statutes of 1913, chapter 67 of the Laws of 1909 was incorporated into paragraph 2733, Civil Code, as subdivision 2 thereof, and changed to read:

"(2.) To prescribe and enforce rules not inconsistent with law or those prescribed by the State Board of Education for their own government and the government of the schools. They shall segregate pupils of the African race from pupils of the white race, and to that end are empowered to provide all accommodations made necessary by such segregation."

This subdivision was again amended by chapter 137, Laws of 1921, to read:

"(2) To prescribe and enforce rules not inconsistent with law or those prescribed by the State Board of Education for their own government and the government of the schools. They shall segregate pupils of the African race from pupils of the Caucasian race in all schools other than High Schools, and to that end are empowered to provide all accommodations made necessary by such segregation."

In 1927 it was re-enacted in the same language (chapter 88, Laws 1927), and in substantially the same language it was carried forward into the Revised Code of 1928 as a part of section 1011.

The material changes of the act of 1909 were to make it mandatory on the board of trustees to segregate and that, too, regardless of the number of African pupils. In other words, the segregation of the races in schools other than high schools was to be complete and the duty of the board to attend to it imperative.

There were only three African pupils in Laguna School District, and defendants suggest that, since

under section 997 of the Revised Code of 1928 new school districts cannot be organized with less than ten census children, by analogy segregation was not intended where the number of African pupils in any district was less than ten. Section 997 has to do with the organization of new districts, and section 1011 has to do with the powers and duties of the board of trustees of an already organized and operating school district. Segregation does not involve the creation of a separate district and is not analogous to it. The African children do not lose their status as members of the school district by reason of segregation any more than do the Caucasian children.

The board did not budget for the school year, beginning September, 1933, the necessary funds to care for the expenses of segregation, and, as they contend, they have no funds available nor means by which to obtain funds to defray such expenses and therefore may not be compelled to segregate.

It is a general rule that a want of funds or means of obtaining them is a ground for denial of the writ as its issuance will be unavailing. 18 R. C. L. 227, § 151; 38 C. J. 556, § 28. But this is not an action to compel defendants to draw their warrant or warrants to pay the expenses of segregation, but an action to compel segregation and to provide accommodations made necessary thereby—"an act which the law specially imposes as a duty resulting from" defendants' office of trustee. Section 4396, Rev. Code 1928. If and when the question of paying the expenses of segregation ever arises, the defense of inability to pay them because of lack of funds or means of obtaining them might well be interposed, but not under the facts of this case.

It is possible that accommodations for the three colored pupils could have been secured with very

little additional expense. There was evidence of a colored school in Laguna District, reached by ferry, not much farther from the home of the three colored children than the school they were attending; also that there were in adjacent or near-by school districts colored schools, or schools where colored pupils attended without objection; and it is possible the defendants could have made arrangements for the three colored children to attend one of these, with little extra expense.

The duty of the board was not to provide for the three colored children a separate school building and a separate teacher, but to secure to them facilities for their education equal to those furnished the Caucasian children of the district. *Burnside* v. *Douglas School District, No. 27, supra.*

The peremptory writ was suspended by defendants giving a *supersedeas* bond. We do not know whether the *status quo* is the same at this time, or whether the segregation for 1934–35 was made, or whether the personnel of the board of trustees is the same. The court will be governed in further proceedings according to the facts.

LOCKWOOD and McALISTER, JJ., concur.