373 P.2d 722

CITY OF MESA, a municipal corporation,
Appellant,

v.

SALT RIVER PROJECT AGRICULTURAL
IMPROVEMENT AND POWER DIS-
TRICT, an agricultural improvement dis-
trict, Appellee.

No. 6976.

Supreme Court of Arizona,

En Banc.

July 5, 1962.

Rehearing Denied Sept. 18, 1962.

J. LaMar Shelley, City Attorney, Mesa, Kramer, Roche, Burch & Streich, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, Phoenix, for appellee.

William G. Barnes, City Atty., Avondale & Tempe, Fred Talmadge, Town Atty., Benson, Eldon H. Towner, Town Atty., Buckeye, William E. Platt, City Atty., Coolidge, W. Shelley Richey, City Atty., Douglas, William Chester, Town Atty., El Mirage, Kenneth Biaett, City Atty., Glendale, F. Britton Burns, Town Atty., Goodyear, Melvyn T. Shelley, Town Atty., Holbrook, Sam Lazovich, Town Atty., Miami, Nasib Karam, City Atty., Nogales, Alvin Moore,

Town Atty., Parker, Norman Wykoff, Town Atty., Peoria, H. J. Wolfinger, City Atty., Prescott, M. V. Gibbons, City Atty., St. Johns, George Song, City Atty., Scottsdale, Keith Benton, Town Atty., Somerton, James A. Yankee, City Atty., Tolleson, Frank Stanlis, Town Atty., Wickenburg, Denzil G. Tyler, City Atty., Winslow, John B. Wisely, Jr., City Atty., Yuma, amici curiæ.

WILLIAM W. NABOURS, Superior Court Judge.

This action was brought by the City of Mesa, hereinafter called the City, for a declaratory judgment against the Salt River Project Agricultural Improvement and Power District, called the District, to determine the respective rights of the parties to serve electrical energy in certain areas within and adjacent to the corporate limits of the City. The District counterclaimed asking that the City be permanently restrained from competing with the District or interfering in any manner with the electric service to any area being served by the District. From a judgment in favor of the District the City appeals.

The City was first incorporated on the 1st day of June, 1883, as the Town of Mesa pursuant to the general territorial laws pertaining to cities and towns then in effect. Later it increased in size and population and was organized under the general laws of the State now Title 9 of the Arizona Revised Statutes. In October 1917, the City acquired the electrical distribution system of the Southside Gas and Electric Company serving the town, together with water and gas distribution systems and since has furnished all three utilities to its residents. The City's incorporated limits were then and for some thirty years thereafter an area of one square mile; however in 1949 and thereafter it annexed certain areas adjacent to the original townsite. In some instances territory was annexed which was unimproved in the sense that in part, at least, it was still devoted primarily to agricultural pursuits.

The District is an agricultural improvement district organized pursuant to the provisions of what is now Chapter 4, Title 45, A.R.S.1956, for the purpose of reclaiming lands susceptible of irrigation. The predecessor in interest to the District was the Salt River Valley Water Users Association, incorporated in 1903, under the General Corporation Laws of the Territory of Arizona. At the time of its organization the townsites of Phoenix, Tempe and Mesa were excluded from its boundaries. On or about March 22, 1937, the Salt River Valley Water Users Association, subject to the rights of the United States, transferred and assigned all its properties, real and personal, and rights therein, and all water and power rights, franchises and privileges to the District but continued to operate the works and facilities. In September of 1949

the District assumed and took over the maintenance and operation of the electric power system from the association and has continued the maintenance and operation to the present time, constructing canals, laterals and electric transmission and distribution lines over and along certain rights of way theretofore granted by the United States and the individual landowners.

In 1929 the Central Arizona Light & Power Company, the City of Mesa and the District served electrical energy in Maricopa County. In general the service areas of the Central Arizona Light & Power Company were the incorporated areas of Maricopa County excluding the City of Mesa. The service of the City was confined to its incorporated limits with certain exceptions not of importance here. Prior to 1929 the Salt River Valley Water Users Association provided some retail electric service in rural areas, and supplied power at wholesale to Central Arizona Light & Power Company, and after 1922 and until 1949 to the City. In 1928 the Salt River Valley Water Users Association embarked upon a plan to provide electric service to rural areas in the Salt River Valley not then being served. Hydro-generating plants were constructed on the Salt River and a transmission system covering the entire area was shortly thereafter completed. Funds for this program were provided by the issuance of bonds.

In 1928 and 1929 as a prerequisite for the issuance of bonds territorial agreements establishing service boundaries were entered into with the Central Arizona Light & Power Company and with the City. The agreement with the City which also provided for the sale of electric energy for distribution to the City's customers was for a five year term, renewed in 1934 for five years and again in 1939 for ten years. Upon its expiration in 1949, the agreement was not renewed nor has any agreement been made since reserving to either party territory which each may serve to the exclusion of the other.

The great growth and development of the Salt River Valley and Maricopa County consistent with suburban living has resulted in the District greatly expanding its facilities and service. In the years following the adoption of the District's rural electrification program tens of thousands of people established homes within the District's boundaries and the District has increased and continues to increase its generative and distributive facilities. Its bonded indebtedness at the time of trial was $55,000,000. As a result of the District's expanding its lines and increasing its services and facilities together with the annexations made by the City whereby it extended its incorporated limits, the District is now serving customers within the City whom the City wishes to supply by its electrical services

and facilities. The District refuses either to remove, abandon or sell its facilities now valued at over $900,000 in the areas in dispute or to desist from serving new customers where it has been doing business, claiming the right to continue to serve without competition and to expand its service therein without limit.

The City claims as a minimum that it has the exclusive right to serve all areas within its corporate limits, even though the same were acquired or extended by annexation and were being served by the District prior to annexation. It urges that a municipal corporation has the exclusive control of its streets and alleyways and only the City can authorize the use of such streets and alleys for public utility purposes, and that no municipality or political subdivision may acquire a franchise to serve or a right to use the City's streets and alleyways within its territorial limits without its consent.

The District's exact status escapes a simple definition. It is not a "public service corporation" as set forth in the Constitution, Art. 15, § 2, A.R.S. and is not subject to regulation by the corporation commission as to its services and rates. State ex rel. Jones v. MacDonald, 76 Ariz. 401, 265 P.2d 454. It is denominated a political subdivision of the state and entitled to all the immunities and benefits granted to municipalities by the Constitution or statutes, Constitution, Art. 13, § 7 [Amendment of 1940]. Yet as a political subdivision its powers are obviously limited to the purposes justifying its political existence. The privileges and immunities granted extend only so far as they have a legitimate relationship to the legal objectives for which the District is organized. But whatever may be the District's exact status, plainly, the effect of selling electricity to the ultimate consumer at retail is to place the District in the position of engaging in business as a public utility for this is a business traditionally affected with public interest.

Essentially, three principal questions are raised by the overlapping of interest. First, can the District be required to terminate its electric service within the disputed areas by reason of the City's annexation. The answer to this question compels an examination of the District's precise legal position.

The District asserts an unrestricted right to use the streets and alleyways of the City by reason of the Constitution of Arizona and legislative enactment. As to the Constitution, the District claims by reason of Art. 13, § 7 thereof that its powers are as broad and its immunities equal to those of a municipal corporation. Still the District may not claim by this provision more than a municipality could claim under like circumstances. Elsewhere in either the or-

ganic law, the statutes or the common law must be found support for the claimed right.

The District in part rests its claim to a continued use of the City's streets and alleyways on A.R.S. § 45–936, subd. A wherein the sale of electric power by the District is authorized in order to reduce the cost of irrigation. The District here is really claiming two rights: first, the right to sell electric power and second, to that end, the right to utilize the streets and alleyways within the incorporated limits of the City without its consent. The first, if construed to include the latter, would conflict with the express language of A.R.S. § 9–240, subd. B, providing that the common councils of cities shall have the right to exercise *exclusive* control over their streets, alleys, avenues and sidewalks. Such a right can not be inferred as it clashes with accepted statutory construction.

The accepted principle is that courts will not render an interpretation of statutes which makes them contradictory to each other but must, if sound reason and good conscience allow, construe statutes in harmony. S. H. Kress & Co. v. Superior Court of Maricopa County, 66 Ariz. 67, 182 P.2d 931. If there is inferred from the right to sell power the right to use the City's streets and alleys for that purpose, the two statutes would be contradictory and not in harmony. A construction denying the inference sought to be given harmonizes

the express right to sell electricity with the exclusive control of streets and alleyways lodged in the City.

The District further claims the right to use the City's streets and alleyways on the language of A.R.S. § 45–938, subd. C, providing:

"C. The district shall have the use of and a right of way is expressly granted to it to locate, construct and maintain *the works* over, through and upon any of the lands which are the property of the state or any subdivision or institution thereof." (Italics supplied.)

It is to be noticed that subsection C refers to "the works". This is a reference to the preceding subsection A which authorizes the District to construct, " * * * *any of the works* necessary to carry out any provision of this chapter, across any stream of water, watercourse, street, avenue, highway, railway, canal, ditch or flume which * * * the district may intersect * * *."

Statutes must be construed as a whole, and hence subsection C will be interpreted in the light of and consistent with subsection A. Together subsections A and C do not import a special grant of power to enter into the distribution of electricity as a business in competition within the City without its consent. The whole of A.R.S. § 45–938 simply grants a right of way to pass over, through and upon any lands of the state and its political subdivisions where

the works of the District intersect or cross. Such a statute does not confer a right to construct works longitudinally in a street. Town of New Castle v. Lake Erie & W. R. Co., 155 Ind. 18, 57 N.E. 516.

◾ While the claim of the District to the use of the streets and alleys of the City does not find support in either Art. 13, § 7 of the Constitution of Arizona or the legislative enactments referred to, it is nonetheless certain that the District may not be required by the City to terminate its operations in the annexed areas without just compensation. Service by the District could have been initiated as early as 1913 under the amendment to the Articles of Incorporation of the Salt River Valley Water Users Association, Art. IV, Sec. 1. Thereafter by laws of 1922, Chapter 23, now A.R.S. § 45–936, the District through its board of directors could have executed and performed contracts or agreements with any person, firm or corporation for the sale of power produced, owned or controlled by the District in order to reduce the cost of irrigation. It could have entered into contracts with any county or other political subdivision for furnishing power for the use of owners or occupants of land within the District. As the areas served by the Salt River Valley Water Users Association and later by the District became more densely populated, it utilized the foregoing powers and both residences and businesses accepted

the services provided by the District—in the disputed localities approximately 1,600 connections. The District thus has been projected in a major fashion into the business of supplying electric power at retail to the ultimate consumer.

While we reject the claim of the District to the use of the streets and alleys within the incorporated limits of the City based upon the Constitution, Art. 13, § 7 and the statutes, A.R.S. §§ 45–936 and 45–938, this does not mean that the City may compel the District to terminate its services in the disputed areas simply because of their incorporation within the municipal limits. The legislature has granted to the District without restriction the right to sell power and the District has acted upon this grant by extending its distributing system so as to meet the reasonable needs of those inhabiting the disputed areas. Whether in so doing the District used the public roads of the state and county, private ways, easements asserted to arise out of the water right applications or a combination thereof is not material to the decision here. A large investment has been made in generating equipment and the various works necessary to supply power to consumers. The District by its investment has committed itself to a public utility undertaking plainly accepting the grant of the state to engage in that business. By such conduct a property right has been created which is protected by the Constitution, Art. 2, § 25 forbidding

the enactment of any law impairing the obligation of contract. Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912; and see Blount v. MacDonald, 18 Ariz. 1, 155 P. 736.

If the public roads of the state or any of its political subdivisions have been used by the District in the operation of its distribution system, consent to such must necessarily be implied from the fact thereof. The District may not be ousted from the use of the public ways once having accepted by acting on the grant of the state. City of Seattle v. Western Union Telegraph Co., 21 Wash.2d 838, 153 P.2d 859; cf. Traverse City v. Consumers Power Co., 340 Mich. 85, 64 N.W.2d 894; Southern Bell Telephone & Tel. Co. v. City of Meridian, 241 Miss. 678, 131 So.2d 666.

If the District has been using private rights of way or a claimed easement, the use is permissive and property within the meaning of Art. 2, § 17, Constitution of Arizona forbidding the taking or damaging thereof without just compensation. The City can not under the guise of a legislative grant to enlarge its corporate limits impair rights so protected.

We therefore hold that the District may not without just compensation be ousted from doing business in the disputed areas nor from the streets and alleys taken over by the City at the time of annexation or thereafter. What we have said is not, how-ever, to be understood as exempting the District from the effect of reasonable regulatory ordinances controlling the uses of its highways and alleys.

Second, it is the City's position that if it may not oust the District from doing business, it has the right to compete with it in the disputed areas. While ordinarily two municipal corporations may not occupy the same territory and exercise the same authority and control over it and the population at the same time, South Park Com'rs. v. Chicago City Ry. Co., 286 Ill. 504, 122 N.E. 89, and see 2 McQuillin, Municipal Corporations § 7.08 (3rd ed. 1949), this is true only as to governmental functions and not those of a proprietary nature. Public Utility District No. 1 v. Town of Newport, 38 Wash.2d 221, 228 P.2d 766. Here both parties are engaged in what is normally considered to be a proprietary or business function. Taylor v. Roosevelt Irr. Dist., 71 Ariz. 254, 226 P.2d 154, and could freely compete unless sound reasons required a contrary conclusion.

The right to compete with the District in the disputed localities has been expressly denied by the legislature in its enactment of A.R.S. § 9–516, subd. A. This statute clearly expresses the public policy of the estate forbidding the competition of the City with the District in this language:

"A. It is declared as the public policy of the state that when adequate public utility service under authority of law is being rendered in an area, within or without the boundaries of a city or town, a competing service and installation shall not be authorized, instituted, made or carried on by a city or town unless or until that portion of the plant, system and business of the utility used and useful in rendering such service in the area in which the city or town seeks to serve, has been acquired."

The legislative history of the foregoing statute is both significant and enlightening. This Court held in its modified decision in City of Tucson v. Polar Water Co., 76 Ariz. 404, 265 P.2d 773, that a city could enter into an area being served by a public service corporation under a certificate of convenience and necessity and there compete with it. There was at the time of the decision no legislation purporting to control the respective rights of municipalities and public utilities where their competing interests overlapped. We said:

"The city has its right or franchise in the form of a constitutional grant; the plaintiff [Polar Water Co.] has its right or franchise in the form of a certificate of convenience and necessity issued by the Arizona Corporation Commission. This court has held in effect that in the absence of legislation a municipality may operate a public utility under its constitutional grant in competition with a private utility operating under a certificate of convenience and necessity. Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321. Therein the court held that any power of regulation concerning competition rested with the legislature if anywhere. While we shall not attempt to define the limits of the regulatory power of the legislature, we do say that merely because the constitution gives municipalities the right to engage in a utility business, it does not mean that the legislature is thereby stripped of its power to protect the franchises lawfully issued by the state and the businesses operated thereunder from damage or destruction caused by the activities of the municipality under its power of operation. There is no constitutional basis for saying that the legislature may not require its municipalities to pay just compensation for the damage or destruction of the business, franchise, or property of lawfully operating private utilities, even though such damage or destruction results from competition." 76 Ariz. 408–409, 265 P.2d 775.

Within two months the legislature enacted Chapter 105, Laws of 1954, now A.R.S. § 9–516. Most certainly, the language of the statute is broad enough to in-

clude the District's operations as a "public utility service under authority of law." Nor is it limited to the narrow interpretation advanced by the City that subsection A is only applicable to public service corporations by the reason of the language of subsection B authorizing condemnation actions against a "public service corporation". Subsection A is all embracive, reaching every service wherein the public interest is affected by the character of the business conducted. We will not import synonymity contrary to plain meaning unless the content of an act permits of no other conclusion. The statute must be given effect according to its plain and obvious meaning. Marquez v. Rapid Harvest Co., 89 Ariz. 62, 358 P.2d 168; Gustafson v. Rajkovich, 76 Ariz. 280, 263 P.2d 540, 40 A.L.R.2d 520.

The City predicates its right to compete with the District upon a claim of exclusive power to franchise utility undertakings within the confines of its incorporated limits. This claim is opposed to the general rule enunciated in 12 McQuillin, Municipal Corporations § 34.10 (3rd ed. 1950):

> "The power to grant franchises resides in the state; and a city, in granting a franchise, acts as agent for the state * * *."

This must necessarily be true since all powers of government are lodged in the people, Constitution, Art. 2, § 2, exercised by the state subject to constitutional limitations. State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884. The City derives its powers from the Constitution and the legislature and has only such powers as are expressly granted or can be reasonably implied therefrom. Town of Holbrook v. Nutting, 57 Ariz. 360, 114 P.2d 226.

The exclusive right to grant franchises within its incorporated limits is sought to be implied from the language of Art. 13, § 4 of the Constitution stating:

> "No municipal corporation shall ever grant, extend, or renew a franchise without the approval of a majority of the qualified electors residing within its corporate limits who shall vote thereon at a general or special election * * *."

The language used provides a method by which franchises granted by a municipality may be exercised. It does not expressly provide that a municipality has the right to grant franchises within its corporate limits. That such can be inferred from the language used does not mean that the right is exclusive. The only inference of exclusiveness to be drawn is that the method of granting, extending or renewing franchises provided by the section is exclusive; otherwise, the dominant interest of the state is destroyed. It is

difficult for us to understand how from the nonexclusive right to grant a franchise can be implied a separate, distinct and exclusive right by a municipality of control of streets and alleyways to the exclusion of the interest of the state. The control and use of highways is of state-wide concern. Clayton v. State, 38 Ariz. 135, 297 P. 1037. Moreover, the dominant interest of the state in the control and regulation of streets and highways is recognized in Art. 13, § 6 which charges: "No grant * * * of any municipality shall divest the State or any of its subdivisions of its or their control and regulation of such use and enjoyment; * * *."

It is urged that A.R.S. § 9–516, if construed to prevent the City from competing with the District within the limits of the City, is unconstitutional. This is predicated upon the language of Art. 13, § 5 of the Constitution which it is asserted gives to the City the unrestricted right to engage in the electric utility service within and without its corporate limits. Art. 13, § 5 reads:

> "Every municipal corporation within this State shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said municipal corporation."

The consequences of the City's argument might follow if we were to hold that the City was without the means to acquire the District's property in the incorporated area by eminent domain but we do not so hold.

This brings us to the third major question presented in this appeal. It is the City's position that if by annexation the District is not ousted from doing business and using the streets and alleys of the City and if it may not compete with the District, then it may acquire the District's facilities by eminent domain. In this we think the City is correct and that the trial court erred.

█ The District is a municipal corporation of a peculiar type. Local 266, etc. v. Salt River Project Agr. Imp. & P. Dist., 78 Ariz. 30, 275 P.2d 393; Rubenstein Const. Co. v. Salt River Proj. Agr. I. & P. Dist., 76 Ariz. 402, 265 P.2d 455. Its primary function as that of an irrigation district has not been changed by the constitutional amendment, Art. 13, § 7. In conducting its ordinary business it is not exercising governmental or political prerogatives as it is not operated for the direct benefit of the general public but only those inhabitants of the District itself. Taylor v. Roosevelt Irr. Dist., 71 Ariz. 254, 226 P.2d 154. On rehearing in the same case, 72 Ariz. 160, 232 P.2d 107, we said that the adoption of the constitutional amendment in no sense altered the inherent characteristics of the District and that it is essentially a business corporation

with attributes of sovereignty which are only incidental, conferred for the purposes of better enabling it to function and accomplish the business and economic purposes for which it was organized.

The right of eminent domain is an inherent right of sovereignty—that is to say, it is inherent in the people, exercised by the state subject to the restrictions and limitations to be found in the constitution. In re Forsstrom, 44 Ariz. 472, 38 P.2d 878. In Arizona there is no constitutional prohibition against the taking of private property for public use except that just compensation shall be made. Inspiration Consol. Copper Co. v. New Keystone Copper Co., 16 Ariz. 257, 144 P. 277.

We have heretofore noted that the District's power to sell electricity is a power incidental to its primary purpose of providing water for irrigation. Property may be taken which is already appropriated to some public use if it appears that the public use to which it is to be applied is a more necessary public use. A.R.S. § 12–1112, subsection 3. In City of Tucson v. The Tucson Gas, Elect. Light & Power Co., 152 F.2d 552 (9th Cir.1945), in a statement with which we do not quarrel the circuit court of the United States in speaking of § 12–1112, subsection 3 said:

"* * * it is our view that the Legislature must have considered that appellee's [The Tucson Gas, Elect.

Light & Power Co.] whole utility is put to a higher use when operated by a municipality, * * *."

Cf. Arizona Corp. Com'n v. Tucson, Gas, Electric Light & P. Co., 67 Ariz. 12, 189 P.2d 907.

The authority of the City to acquire by condemnation the interests of the District is clear from an examination of A.R.S. §§ 9–521 and 9–522. A.R.S. § 9–522 authorizes the acquisition by the exercise of eminent domain of a utility undertaking or a part thereof subject to the requirements and restrictions of A.R.S. §§ 9–515 through 9–518. A utility undertaking is defined by A.R.S. § 9–521 as an electric light or power plant or system. Cf. City of Scottsdale v. Municipal Court of Tempe, 90 Ariz. 393, 368 P.2d 637.

The District argues that by subsection B of A.R.S. § 9–516 the City's right is restricted to acquiring the facilities of a "public service corporation" by eminent domain. We do not think this necessarily follows. A.R.S. § 9–522 was originally enacted in 1943 and A.R.S. § 9–516 was enacted in 1954—Chapter 105, Laws of 1954. Chapter 105, section 2 of the Laws of 1954 was specifically named as an amendment to Art. 6, Ch. 16 of the Code of 1939 "by adding" the subsection under consideration. Since no repeal was declared in the Act, presumably the legislature did not consider the contents as in conflict with other portions

of the same chapter. [Chapter 16 of the 1939 Code as supplemented].

▮ The District's interpretation would effect a repeal by implication of that portion of A.R.S. § 9–522, initially Chapter 31, Laws of 1943, which authorizes the acquisition of electric light or power plants or systems as utility undertakings. While a statute may be repealed by implication as well as by direct language, such repeals are not favored and will not be indulged if there is any other reasonable construction. Southern Pac. Co. v. Gila County, 56 Ariz. 499, 109 P.2d 610. It is only when by no reasonable construction can two statutes be operative that the latter act repeals the former by implication. Burnside v. Douglas School Dist. No. 27, 33 Ariz. 1, 261 P. 629.

▮ The inconsistency of the District's argument becomes more apparent when it is noted that the second sentence of A.R.S. § 9–516, subd. B provides that "Such action shall be brought and prosecuted in the same manner as other civil actions." An identical procedure in condemnation was already provided by A.R.S. § 12–1116 then § 27–909 A.C.A.1939, in this language:

"All proceedings for condemnation must be brought in the superior court of the county in which the property is situated, in the same manner as other civil actions." [27–909 A.C.A.1939.]

Can it be said that A.R.S. § 12–1116 is in anyway altered or repealed by the subsequent legislation? We do not believe the legislature's purpose in adopting subsection B was to restrict A.R.S. § 9–522 but was simply to reaffirm the right of eminent domain in particular as against public service corporations. The statutes should be construed in the light of the evil which they were designed to remedy. Peterson v. Sundt, 67 Ariz. 312, 195 P.2d 158.

▮ The foregoing settles the principal issues arising between the parties to this litigation. Other matters will be dealt with here summarily. The court below determined the boundaries of the disputed areas in favor of the District finding that the service area of the District was that generally established under the 1929 agreement. The City argues that some of the areas at the time of annexation were unimproved, which we take to mean principally devoted to farming, and that it can serve in the unimproved areas without paralleling the District's line. The court below found as a fact that the District provided adequate service within the disputed area when requested. It was reasonable to conclude pursuant to the language of A.R.S. § 9–516, subd. A, supra, that the areas of service were not to be decided solely by whether the City was able to serve without paralleling the District's facilities.

In 1949 the City applied to the Arizona Power Authority for a Purchase Certificate and was granted a certificate for the following described areas:

> "The exterior boundaries of said applicant as are described in the official records of the County Board of Supervisors and County Recorder of Maricopa County, together with any and all annexations, proposed additions, territory served or proposed for service, constituting the immediate environs of said municipality."

The City maintains that such Power Purchase Certificate is authority for the City to serve in the disputed localities and prohibits the District from serving such areas. The District maintains that the certificate is void as it exceeds the statutory authority granted under the Power Authority Act.

A.R.S. § 30–154 provides that certificates shall be granted as a matter of right in certain instances, to wit:

> "3. The application of any incorporated city or town for a power purchase certificate covering territory within its corporate boundaries not otherwise served with electrical energy.

> "4. The application of any incorporated city or town for a power purchase certificate for electrical energy to be distributed generally within its corporate boundaries where the city or town has acquired or has consummated all steps necessary to acquire the electric facilities of the distributor or distributors then serving the inhabitants of the city or town."

The Act within itself does not give the Commission authority to confer the right to engage in the distribution of electric energy. Its only function is to distribute available power to operating units. Any certificate granted by it to a city or town must be limited to the provisions contained in the statute. The District having been established in those areas which now the City seeks to serve, the Commission has no authority to grant electric power to the City for that purpose. To the extent that such certificate purports to embrace those areas herein disputed it is ineffectual to confer any rights.

The District points to certain water right applications executed by various landowners granting rights of way to the United States and its successors and assigns. Under the law applicable to this controversy it is unnecessary to consider what, if any, rights emanate from such water right applications. An action for declaratory relief only justifies a declaration of rights upon an existing state of facts, not one which may or may not arise in the future or which might or might not develop. Such can not form the basis for a declaratory judgment. Maricopa County v. Leppla, 89 Ariz. 220, 360 P.2d 227; Moore v. Bolin, 70 Ariz. 354, 220 P.2d 850.

· The judgment of the court below is affirmed in part and in part reversed, with directions to enter a further judgment consistent with this decision.

BERNSTEIN, C. J., UDALL, V. C. J. and STRUCKMEYER and LOCKWOOD, JJ., concurring.

NOTE: The Honorable RENZ L. JENNINGS being disqualified, the Honorable WILLIAM W. NABOURS, Judge of the Superior Court of Yuma County, Arizona, was called to sit in his stead.